# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendant. | Civil Action No. 07CV3378 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff NAACP Legal Defense & Educational Fund, Inc. respectfully submits this Memorandum of Law in support of its motion for preliminary injunction.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

I.     The CDBG Disaster Recovery Grant Program ................................................... 2

II.    LDF's FOIA Request ........................................................................................ 4

ARGUMENT ................................................................................................................ 5

I.     Plaintiff Is Entitled To A Preliminary Injunction Compelling Defendant To Process Its Request On An Expedited Basis ........................................................ 7

      A.    Irreparable Injury Is Likely To Result If Plaintiff's Request For A Preliminary Injunction Is Not Granted ........................................................ 8

      B.    Plaintiff Is Likely To Succeed On The Merits Because Plaintiff Satisfies The Requirements For Expedited Processing ...................................... 10

            1.    LDF Is An Organization Primarily Engaged In Disseminating Information ........................................................................................ 10

            2.    There Is An Urgency To Inform The Public Regarding Defendant's Management And Oversight Of The CDBG Disaster Recovery Grant Program ........................................................ 11

      C.    A Balance Of Hardships Clearly Favors Plaintiff ............................................. 16

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU v. Department of Defense*,
339 F. Supp. 2d 501 (S.D.N.Y. 2004) ........................................................................ 7

*Al-Fayed v. CIA*,
254 F.3d 300 (D.C. Cir. 2001) ............................................................................... 12

*Department of the Air Force v. Rose*,
425 U.S. 352 (1976) ............................................................................................ 6

*Edmonds v. FBI*,
417 F.3d 1319 (D.C. Cir. 2005) ....................................................................... 8, 17

*Electronic Privacy Information Center v. Department of Justice*,
416 F. Supp. 2d 30 (D.D.C. 2006) ........................................................ 8, 9, 13, 14

*Elrod v. Burns*,
427 U.S. 347 (1976) ............................................................................................ 9

*Federal Express Corp. v. Federal Espresso, Inc.*,
201 F.3d 168 (2d Cir. 2000) ............................................................................ 7, 16

*Founding Church of Scientology of Washington, D.C., Inc. v. Bell*,
603 F.2d 945 (D.C. Cir. 1979) .............................................................................. 7

*Haitian Centers Council, Inc. v. McNary*,
969 F.2d 1326 (2d Cir. 1992) ............................................................................. 16

*Halpern v. FBI*,
181 F.3d 279 (2d Cir. 1999) ................................................................................. 5

*Judicial Watch, Inc. v. United States Department of Energy*,
191 F. Supp. 2d 138 (D.D.C. 2002) ...................................................................... 7

*Leadership Conference on Civil Rights v. Gonzales*,
404 F. Supp. 2d 246 (D.D.C. 2005) ........................................................ 11, 13, 14

*National Archives & Records Administration v. Favish*,
541 U.S. 157 (2004) ............................................................................................ 5

*Natural Resources Defense Council v. Department of Energy*,
191 F. Supp. 2d 41 (D.D.C. 2002) ........................................................................ 8

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ............................................................................................ 5

*Patton v. Dole*,
    806 F.2d 24 (2d Cir. 1986) ................................................................ 16

*Reynolds v. Giuliani*,
    35 F. Supp. 2d 331 (S.D.N.Y. 1999) ................................................... 9

*Sale v. Haitian Centers Council, Inc.*,
    509 U.S. 918 (1993)........................................................................... 16

*Trafficante v. Metropolitan Life Insurance Co.*,
    409 U.S. 205 (1972)........................................................................... 15

*United States Department of Justice v. Reporters Committee for Freedom of the Press*,
    489 U.S. 749 (1989)............................................................................. 6

*United States Department of Justice v. Tax Analysts*,
    492 U.S. 136 (1989)............................................................................. 5

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973)............................................................. 7

*Washington Post v. Department of Homeland Security*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ............................................... 7, 8, 9

**Statutes**

5 U.S.C. § 552.................................................................................... 1

5 U.S.C. § 552(a) ............................................................................... 6

5 U.S.C. § 552(a)(4)(A)(iii) ............................................................... 4

5 U.S.C. § 552(a)(4)(B) ..................................................................... 6

5 U.S.C. § 552(a)(6)(A)(i) ................................................................. 6

5 U.S.C. § 552(a)(6)(E)(i) .................................................................. 4

5 U.S.C. § 552(a)(6)(E)(i)(I) ............................................................ 10

5 U.S.C. § 552(a)(6)(E)(ii)(I) ....................................................... 6, 17

5 U.S.C. § 552(a)(6)(E)(iii).......................................................... 6, 17

5 U.S.C. § 552(a)(6)(E)(v) ............................................................. 10

5 U.S.C. § 552(b) ............................................................................... 6

42 U.S.C. § 3608(e)(5)...................................................................... 15

42 U.S.C. § 5301(c) ................................................................................................ 3

Department of Defense, Emergency Supplemental Appropriations to
    Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza
    Act, 2006, Pub. L. No. 109-148, 119 Stat. 2680 (Dec. 30, 2005) ...................... 2, 3, 4

Emergency Supplemental Appropriations Act for Defense, the Global
    War on Terror, and Hurricane Recovery, 2006, Pub. L. No. 109-234,
    120 Stat. 418 (June 15, 2006) ........................................................................ 3, 4


**Regulations**

24 C.F.R. § 15.105(b) ............................................................................................ 4

24 C.F.R. § 15.105(b)(2) ...................................................................................... 10

24 C.F.R. § 15.110(h) ............................................................................................ 4

71 Fed. Reg. 7666 (Feb. 13, 2006) .............................................................. 3, 4, 15

71 Fed. Reg. 34,457 (June 14, 2006) ..................................................................... 3

71 Fed. Reg. 62,372 (Oct. 24, 2006) ...................................................................... 3

71 Fed. Reg. 63,337 (Oct. 30, 2006) ............................................................ 3, 4, 15

72 Fed. Reg. 10,020 (Mar. 6, 2007) ....................................................................... 3


**Bills and Legislative Hearings**

Federal Housing Finance Reform Act of 2007, H.R. 1427, 110th Cong.
    (as referred to H. Comm. on Financial Servs., Mar. 9, 2007) .................................. 14

Gulf Coast Hurricane Housing Recovery Act of 2007, H.R. 1227, 110th
    Cong. (as passed by House, Mar. 21, 2007) .......................................................... 14

Katrina Housing Tax Relief Act of 2007, H.R. 1562, 110th Cong. (as
    passed by House, Mar. 27, 2007)........................................................................... 14

Workforce Housing Construction for the GO Zone Act of 2007, S. 1180,
    110th Cong. (as referred to S. Comm. on Finance, Apr. 20, 2007)......................... 14

*Beyond Trailers, Part I: Creating a More Flexible, Efficient, and Cost-
    Effective Federal Disaster Housing Program: Hearing Before the Ad
    Hoc Subcomm. on Disaster Recovery of the S. Comm. on Homeland
    Security & Governmental Affairs*, 110th Cong. (Apr. 24, 2007)............................ 13

*Federal Housing Response to Hurricane Katrina: Hearing Before the H.*
  *Comm. on Financial Servs.*, 110th Cong. (Feb. 6, 2007) ..................... 14

*GAO's Analysis of the Gulf Coast Recovery: A Dialogue on Removing*
  *Obstacles to the Recovery Effort: Hearing Before the Ad Hoc*
  *Subcomm. on Disaster Recovery of the S. Comm. on Homeland*
  *Security & Governmental Affairs*, 110th Cong. (Apr. 12, 2007) ............. 14

*Hurricanes Katrina & Rita: Outstanding Need, Slow Progress: Hearing*
  *Before the S. Comm. on Homeland Security & Governmental Affairs*,
  110th Cong. (Jan. 29, 2007) ................................................. 14

*Insurance Claims Payment Processes in the Gulf Coast after the 2005*
  *Hurricanes: Hearing Before the Subcomm. on Oversight &*
  *Investigations of the H. Comm. on Financial Servs.*, 110th Cong.
  (Feb. 28, 2007) ............................................................ 14

*Oversight of Department of Housing & Urban Development: Hearing*
  *Before the H. Comm. on Financial Servs.*, 110th Cong. (Mar. 14, 2007) .... 13

*Solving the Affordable Housing Crisis in the Gulf Region Post Katrina:*
  *Why No Progress and What Are the Obstacles to Success?: Field*
  *Hearing Before the Subcomm. on Housing & Community Opportunity*
  *of the H. Comm. on Financial Servs.*, 110th Cong. (Feb. 22-23, 2007) ...... 14

**Other Authorities**

Brookings Institution & Greater New Orleans Community Data Center,
  *The Katrina Index: Tracking Recovery of New Orleans and the Metro*
  *Area* (Apr. 12, 2007) ...................................................... 12

Leslie Eaton, *Slow Home Grants Stall Progress in New Orleans*, N.Y.
  Times, Nov. 11, 2006, at A1 ................................................ 13

Gwen Filosa, *Nagin Wants to Run Road Home in N.O. – Congressional*
  *Panel Gets an Earful on Public Housing*, Times-Picayune (New
  Orleans), Feb. 23, 2007, at A1 ............................................. 13

*Oxfam Concerned About Sale of Public Housing on Coast*, Miss. Link,
  Sept. 7, 2006, at 1 ........................................................ 13

**<u>INTRODUCTION</u>**

Plaintiff, the NAACP Legal Defense and Educational Fund, Inc. ("LDF"), respectfully submits this Memorandum of Law in support of Plaintiff's Motion for Preliminary Injunction. LDF seeks the immediate processing and release of agency records, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from Defendant the United States Department of Housing and Urban Development ("HUD").

This case involves HUD's failure, in violation of FOIA, to expeditiously process LDF's request for records pertaining to HUD's administration of the CDBG Disaster Recovery Grant Program, a $16.7 billion Community Development Block Grant program allocated by Congress for necessary expenses related to disaster relief, long-term recovery, and rebuilding expenses in those areas of the Gulf of Mexico most affected by Hurricanes Katrina and Rita in 2005. In particular, LDF seeks documents related to HUD's administration of the Disaster Recovery Grant program as to the states of Louisiana and Mississippi, and records related to studies conducted by the HUD Office of the Inspector General and the Government Accountability Office regarding the administration of this program.

LDF filed a FOIA request seeking these documents on March 19, 2007. In light of the public's urgent need for the information and the time-sensitive nature of the information sought, LDF's March 19th request included an application for expedited processing pursuant to FOIA and HUD's FOIA regulations. HUD has failed to respond to LDF's request for expedited processing within the statutory time frame. LDF has thus been denied its statutory right to expedited processing, and therefore seeks a preliminary injunction ordering HUD to process LDF's FOIA request immediately, and to release records that have been unlawfully withheld.

The risks to the integrity of open government resulting from HUD's refusal to disclose the requested records are high. The right of the public to the transparent administration of a major federal program is at stake, and the timely release of the requested information is critical to the public's ability to evaluate whether the Disaster Recovery Grant program is being administered in compliance with federal law. Delay in the release of documents needed to ensure that statutory and regulatory requirements are being met also carries the risk that Disaster Recovery Grant funds will be misdirected, with the result that the intended beneficiaries of the program – poor families from areas affected by the hurricanes – will not receive the housing redevelopment assistance that they need and that Congress intended them to have. The states receiving CDBG Disaster Recovery Grants have already begun to develop full or partial plans for the expenditure of those funds, and have started distributing funds in accordance with those plans. This Court's intervention is therefore necessary to compel disclosure of the requested documents and to vindicate the principles of open government embodied in FOIA.

For these reasons, Plaintiff respectfully requests that this Court (1) grant Plaintiff's Motion for Preliminary Injunction and order HUD to commence the immediate processing of Plaintiff's FOIA Request; and (2) order HUD to produce all available responsive documents, as well as an index for any withheld documents and the reasons for their non-disclosure, by May 24, 2007.

## **FACTUAL BACKGROUND**

## I.     **The CDBG Disaster Recovery Grant Program.**

The CDBG Disaster Recovery Grant program was funded through two appropriations statutes that were passed in the months after Hurricanes Katrina and Rita. The first statute, named the "Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006," Pub. L. No. 109-148, 119

Stat. 2680 (Dec. 30, 2005), appropriated $11.5 billion to the five affected states (Louisiana,

Mississippi, Texas, Florida, and Alabama) for CDBG Disaster Recovery Grants. *See* 119 Stat. at

2779-81. The second statute, named the "Emergency Supplemental Appropriations Act for

Defense, the Global War on Terror, and Hurricane Recovery, 2006," Pub. L. No. 109-234, 120

Stat. 418 (June 15, 2006), appropriated an additional $5.2 billion to the same states. *See* 120

Stat. at 472-73. The CDBG Disaster Recovery Grant program authorized by these two

appropriations statutes amounts to a combined total of $16.7 billion; Louisiana and Mississippi

together received over 95% of the appropriated amount. *See* 71 Fed. Reg. 7666, 7666 (Feb. 13,

2006); 71 Fed. Reg. 63,337, 63,338 (Oct. 30, 2006).

    The two statutes (the "Appropriations Acts") establishing the Disaster Recovery Grant

program adopt the general framework that governs the regular Community Development Block

Grant ("CDBG") program, but also authorize HUD, upon request from a state, to waive many

CDBG program requirements – except for those relating to fair housing, nondiscrimination, labor

standards, and the environment. *See* 119 Stat. at 2780; 120 Stat. at 472-73. The Acts allow

HUD to require that only 50% of funds benefit low- and moderate-income persons (as opposed

to the normal 70% CDBG requirement, *see* 42 U.S.C. § 5301(c)), or even to eliminate the

requirement entirely on a finding of "compelling need."[1] *See* 119 Stat. at 2780; 120 Stat. at 473.

And the Acts require each state to submit an action plan in advance of the receipt of grant funds

that details the state's intended uses of those funds, and to submit a quarterly report to the Senate

and House Committees on Appropriations reporting on all awards and uses of funds. *See* 119

---

[1] HUD has to date adopted the 50% threshold for most proposed uses of CDBG Disaster
Recovery Grant funds in Louisiana and Mississippi, and has eliminated the "benefit to low- and
moderate-income persons" requirement in its entirety for certain Mississippi programs. *See* 71
Fed. Reg. 7666, 7667 (Feb. 13, 2006); 71 Fed. Reg. 34,457, 34,460 (June 14, 2006); 71 Fed.
Reg. 62,372, 62,373-74 (Oct. 24, 2006); 71 Fed. Reg. 63,337, 63,339 (Oct. 30, 2006); 72 Fed.
Reg. 10,020, 10,021 (Mar. 6, 2007).

Stat. at 2780; 120 Stat. at 473. Finally, HUD has by regulation required grantees to meet public participation, reporting, and oversight requirements as well as to certify that they are in compliance with civil rights mandates. *See* 71 Fed. Reg. 7666 (Feb. 13, 2006); 71 Fed. Reg. 63,337 (Oct. 30, 2006).

## II.  **LDF's FOIA Request.**

On March 19, 2007, LDF submitted a FOIA request to HUD by overnight mail. *See* Colangelo Decl. ¶ 2; LDF FOIA Request (Ex. 1).[2]  LDF's request sought certain records concerning HUD's administration of the CDBG Disaster Recovery Grant program as to the states of Louisiana and Mississippi. In its request, LDF listed the categories of records sought, including records relating to grantee requests for program waivers, HUD's decisions to approve requested waivers, mandatory certifications and reports from state grantees, data regarding the race and income level of applicants for Disaster Recovery Grant funds, studies regarding the administration of the program, and communications from or to Congress. *See* LDF FOIA Request (Ex. 1). Plaintiff's FOIA request included a request for expedited processing pursuant to FOIA and HUD's FOIA regulations, in light of the compelling need for the requested records; they also included a request for a fee waiver. *See id.* at 5-8 (requesting expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i) and 24 C.F.R. § 15.105(b), and requesting a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 24 C.F.R. § 15.110(h)).

HUD responded by letter dated March 22, 2007, stating that LDF's FOIA request was received on March 21. *See* Colangelo Decl. ¶ 4; Letter from O'Connor to Colangelo (Ex. 2). The letter stated that HUD's FOIA Office had a backlog of open FOIA requests, and anticipated that new requests would require sixty days for processing. *See* Letter from O'Connor to

---

[2] All references in this Memorandum to "(Ex. __)" are to the exhibits to the accompanying Declaration of Matthew Colangelo, filed herewith.

Colangelo.  The letter does not include any determination of or reference to Plaintiff's request for expedited processing, either approving or denying that request; but the letter does refer to "first-in/first-out" processing.  *Id.*  On March 28, 2007, counsel contacted the "HUD FOIA Specialist" assigned to LDF's request by phone at the contact number provided in the March 22 letter.  *See* Colangelo Decl. ¶ 6.  Counsel asked whether the letter's reference to "first-in/first-out" processing was meant to be an implicit denial by HUD of LDF's request for expedited processing, and requested that if so, a denial of that request be issued in writing.  *Id.*  The HUD FOIA Specialist responded that the March 22 letter was a routine response letter used to indicate receipt of a request, that it was not intended as a determination of LDF's request for expedited processing, and that HUD would respond shortly in writing.  *Id.* ¶ 7.  On March 30, 2007, the HUD FOIA Specialist informed counsel by voicemail message that she was waiting to speak with a HUD attorney regarding LDF's request for a fee waiver, and that HUD would inform LDF in writing regarding a fee waiver decision.  *Id.* ¶ 8.  The voicemail message did not reference LDF's request for expedited processing.  *Id.*  LDF has not received any further response from HUD as of the date of commencement of this action.  *Id.* ¶ 9.

## ARGUMENT

It has long been recognized that freedom of information is a "structural necessity in a real democracy."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  In enacting FOIA, Congress recognized that an informed citizenry is "needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA thus "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies."  *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (explaining that the purpose of FOIA is "to open agency action to the light of public

scrutiny") (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  To that end,

FOIA directs government agencies to disclose certain types of records and describes the manner

of disclosure required, *see* 5 U.S.C. § 552(a), while setting forth the specific categories of

records exempted from disclosure.  *Id.* § 552(b).

Ordinarily, an agency must respond to a FOIA request within twenty days.  *See id.*

§ 552(a)(6)(A)(i).  When expedited processing is requested, however, the agency must determine

whether to provide such expedited processing, and must notify the requester of that

determination within ten days after the date of the request.  *See id.* § 552(a)(6)(E)(ii)(I).  As

noted, Defendant's response letter states that Defendant received Plaintiff's FOIA request on

March 21; Defendant was thus required both to decide whether to grant Plaintiff's request for

expedited processing and to notify Plaintiff of that decision within ten days, or by April 4.

HUD's failure to notify LDF of any decision regarding expedited processing – a *de facto* denial

of LDF's request – violates FOIA and should be immediately enjoined.  *See id.* §

552(a)(6)(E)(iii) (providing that the failure of an agency to respond within ten days to a request

for expedited processing is subject to judicial review).

This Court's review of HUD's determination is *de novo*, and HUD bears the burden of

justifying its actions.  5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't of Justice v. Reporters Comm.*

*for Freedom of the Press*, 489 U.S. 749, 755 (1989) ("Unlike the review of other agency action

that must be upheld if supported by substantial evidence and not arbitrary or capricious, the

FOIA expressly places the burden 'on the agency to sustain its action,' and directs the district

courts to 'determine the matter de novo.'") (quoting 5 U.S.C. § 552(a)(4)(B)).

I.     **Plaintiff Is Entitled To A Preliminary Injunction Compelling Defendant To Process Its Request On An Expedited Basis.**

HUD's failure to provide expedited processing within the ten-day statutory period violates FOIA and warrants the grant of a preliminary injunction. In order to prevail on a motion for a preliminary injunction, Plaintiff must demonstrate:

> (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000). As shown below, Plaintiff meets the burden warranting immediate injunctive relief.

Plaintiff respectfully requests that this Court order HUD to proceed with the immediate processing of Plaintiff's FOIA request, and direct a date certain by which HUD must respond with both responsive records and *Vaughn* indices[3] for any records that HUD believes may be lawfully withheld. *See, e.g.*, *Wash. Post v. Dep't of Homeland Security*, 459 F. Supp. 2d 61, 76 (D.D.C. 2006) (granting the plaintiff's motion for a preliminary injunction for expedited processing and ordering the defendant to produce or identify all responsive records within ten days of the date of the order); *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004) (ordering defendant agencies to produce or identify all documents responsive to the plaintiffs' FOIA requests within thirty days from the date of the order); *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 141 (D.D.C. 2002) (ordering defendant agencies to produce non-exempt records, and to provide a *Vaughn* index for documents claimed to be

---

[3] A *Vaughn* index is an itemized index describing all documents or portions of documents that are alleged by the agency to fall with one of FOIA's statutory exemptions from disclosure, including a statement and explanation of the claimed exemption with sufficient specificity to permit a reasoned judgment as to whether the material is actually exempt. *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973); *see also Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

exempt from disclosure, within twenty days from the date of the order); *Natural Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43-44 (D.D.C. 2002) (granting the plaintiffs' request for expedited processing and ordering initial release of non-exempt records within one month from the date of the order).

### A.    Irreparable Injury Is Likely To Result If Plaintiff's Request For A Preliminary Injunction Is Not Granted.

LDF is likely to suffer irreparable injury if HUD's constructive denial of expedited processing is upheld.  The "very nature of the right that plaintiff seeks to vindicate in this action – expedited processing – depends on timeliness."  *Wash. Post*, 459 F. Supp. 2d at 74.  The inclusion of a statutory right to expedition in FOIA "underlined Congress' recognition of the value in hastening release of certain information."  *Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005).  The loss of that value itself "constitutes a cognizable harm."  *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 40 (D.D.C. 2006).  And because "time is necessarily of the essence in cases like this, such harm will likely be irreparable."  *Id.* at 40-41.  HUD's failure to comply with FOIA's requirements thus causes irreparable injury to Plaintiff, by depriving Plaintiff of its statutory right to expedited processing.

In addition to losing its right to expedited processing, Plaintiff will also be precluded, absent a preliminary injunction, from obtaining information that is vital to an assessment of HUD's management and oversight of the Disaster Recovery Grant program.  This $17 billion housing redevelopment program is the subject of national debate and is of critical importance to those citizens displaced or affected by Hurricanes Katrina and Rita.  Timely analysis of the management of the Disaster Recovery Grant program is essential because, as noted, the state grantees have already begun to distribute the billions of dollars allocated to them through the program.  Lack of the requested information hinders LDF's ability to inform the public regarding

the adequacy of HUD's management and oversight.[4]  *See Wash. Post*, 459 F. Supp. 2d at 74-75

(finding that a likelihood of irreparable harm existed if plaintiff's request for information from

the Secret Service, regarding visitors' logs at the Vice President's office and residence, did not

receive expedited treatment, because the requested records were the subject of national debate

and could inform the public's choices in an upcoming congressional election); *Elec. Privacy*

*Info. Ctr.*, 416 F. Supp. 2d at 40-41 ("Beyond losing its right to expedited processing, [the

plaintiff] will also be precluded, absent a preliminary injunction, from obtaining in a timely

fashion information vital to the current and ongoing debate surrounding the legality of the

Administration's warrantless surveillance program.").

Furthermore, if the program is not currently being administered in compliance with

statutory and regulatory requirements, delay in the release of the requested records could make it

impossible for low- and moderate-income families ultimately to receive the housing

redevelopment assistance that Congress intended for them to have when it passed the

Appropriations Acts.  *Cf. Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 339-340 (S.D.N.Y. 1999)

(finding irreparable harm where the defendant's policies regarding distribution of welfare

benefits endangered the well-being of individuals in need of public assistance).  For this reason

too, HUD's failure to comply with FOIA's requirements will likely cause irreparable harm.

---

[4] As described in Part I.B.1 below, Plaintiff's activities routinely include providing the public
with analysis regarding the civil rights implications of government policies, and Plaintiff's
expertise in civil rights litigation and advocacy provides Plaintiff with a unique perspective in
that endeavor.  Allowing HUD to continue its delay in producing responsive records would thus
cause additional irreparable harm by precluding Plaintiff from providing the public with its
particular perspective on the lawfulness of HUD's administration of the Disaster Recovery Grant
program. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[T]he loss of First Amendment
freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

**B.**     **Plaintiff Is Likely To Succeed On The Merits Because Plaintiff**
          **Satisfies The Requirements For Expedited Processing.**

Plaintiff's request satisfies the standard for expedited processing under both FOIA and

HUD's regulations, and Plaintiff is therefore likely to succeed on the merits of its claim.

FOIA provides for expedited processing of requests for records "in cases in which the

person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I).

The statute defines "compelling need" to mean, "with respect to a request made by a person

primarily engaged in disseminating information, urgency to inform the public concerning actual

or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v). HUD's regulations similarly

define a "compelling need" to exist when the requester is "primarily engaged in disseminating

information and there is an urgency to inform the public concerning actual or alleged Federal

Government activity." 24 C.F.R. § 15.105(b)(2). Plaintiff has demonstrated a compelling need

for the requested records because Plaintiff is primarily engaged in disseminating information,

and there is an urgency to inform the public regarding the management and oversight of the

CDBG Disaster Recovery Grant program.

**1.**     **LDF Is An Organization Primarily Engaged In Disseminating**
          **Information.**

Plaintiff LDF is a national non-profit civil rights litigation and public advocacy

organization, whose activities include disseminating information it gathers from a variety of

sources, including the Freedom of Information Act. *See* Compl. ¶¶ 6-7. To advance LDF's

advocacy, LDF routinely uses records requests, including FOIA, to obtain information from

federal and state agencies that LDF staff then analyze to inform the public about important

matters regarding civil rights and equal opportunity for African Americans. *Id.* ¶ 7. LDF staff

regularly provide testimony on such matters to governmental and other decision-making entities.

*Id.* LDF publishes, regularly and to a broad public, originally authored reports, essays, editorials,

news briefs, "Know Your Rights" pamphlets, and other publications on a range of important civil rights matters. *Id.* LDF also accomplishes its public education and advocacy objectives through electronic newsletters that are distributed to thousands of subscribers by email, and through its heavily trafficked website, <www.naacpldf.org>. *Id.* LDF's website receives several thousand unique visits per day; visitors to LDF's website complete more than 60,000 downloads, of more than 700 distinct documents, each month. *Id.*

A particular focus of LDF's public education efforts since August 2005 has been protecting the civil rights of individuals affected by Hurricanes Katrina and Rita. *Id.* ¶ 8. These efforts have addressed civil rights issues that have arisen since the hurricanes in areas including education, housing, and voting rights, and have included such means as presentations at conferences, participation in print and broadcast media interviews, the creation and staffing of Voter Empowerment Centers in Louisiana and other states, and the production and distribution of electronic and print publications. *Id.*

LDF is thus "primarily engaged in disseminating information" within the meaning of FOIA. *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259 (D.D.C. 2005) (holding that the plaintiff "disseminates information regarding civil rights and voting rights to educate the public, promote effective civil rights laws, and ensure their enforcement by the Department of Justice," and is therefore "primarily engaged in disseminating information" for FOIA purposes).

### 2. There Is An Urgency To Inform The Public Regarding Defendant's Management And Oversight Of The CDBG Disaster Recovery Grant Program.

In addition, there is an urgency to inform the public regarding the extent of HUD's compliance with statutory and regulatory requirements regarding the CBDG Disaster Recovery Grant program. The D.C. Circuit, the only Court of Appeals to have addressed the standard for

determining when FOIA's "urgency to inform" requirement has been met, recently examined the legislative history of the expedited processing provisions and explained the proper standard as follows:

> [I]n determining whether requestors have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.

*Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (citing legislative history). Plaintiff easily satisfies these requisites.

First, the records Plaintiff requested concern a matter of current exigency to the American public. The use of CDBG Disaster Recovery Grant funds to assist in disaster relief, long-term recovery, and rebuilding expenses in those areas in the Gulf region affected by Hurricanes Katrina and Rita is a topic of overwhelming and pressing significance to the hundreds of thousands of families displaced or affected by those events. In New Orleans alone, for example, it is estimated that more than half of the city's pre-storm population remains displaced as a result of the hurricanes, and many of those who have returned are having difficulty rebuilding. *See* Brookings Institution & Greater New Orleans Community Data Center, *The Katrina Index: Tracking Recovery of New Orleans and the Metro Area* 6, 33 tbl.10 (Apr. 12, 2007), *available at* http://www.gnocdc.org/KI/KatrinaIndex.pdf.

The immediate public interest in the matter is further indicated by the extensive media coverage, both nationally as well as locally in the affected areas, discussing and debating the

efficacy and utility of programs funded with CDBG Disaster Recovery Grants.[5] *See, e.g.*, *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 42 ("[G]iven the great public and media attention that the government's warrantless surveillance program has garnered . . . , the public interest is particularly well-served by the timely release of the requested documents."); *Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260 ("[T]he administrative record in this case is full of news reports and magazine articles regarding [the subject of the plaintiff's FOIA request.]").

In addition, Congress has held numerous committee and subcommittee hearings on affordable housing opportunities for families displaced by Hurricanes Katrina and Rita, examining a number of housing-related disaster relief initiatives including the CDBG Disaster Recovery Grant program.[6] Congress is also, at present, considering several bills to address the

---

[5] A search of the LexisNexis "All News" database for "Hurricane Katrina" and "Community Development Block Grant," performed on April 24, 2007, generated 2187 hits. A search of the same database on the same date for "Louisiana" and "Road Home Program," which is only one of the activities that Louisiana has funded with its Disaster Recovery Grant allocation, generated 1481 hits. Much of this coverage has focused on reported problems with state and federal administration of the CDBG Disaster Recovery Grant program and with activities funded by the Disaster Recovery Grants. *See, e.g.*, Gwen Filosa, *Nagin Wants to Run Road Home in N.O. – Congressional Panel Gets an Earful on Public Housing*, Times-Picayune (New Orleans), Feb. 23, 2007, at A1; Leslie Eaton, *Slow Home Grants Stall Progress in New Orleans*, N.Y. Times, Nov. 11, 2006, at A1; *Oxfam Concerned About Sale of Public Housing on Coast*, Miss. Link, Sept. 7, 2006, at 1 ("Congress has approved billions of dollars in Community Development Block Grants (CDBG) to rebuild the coast, yet little has been designated for bringing back affordable rental housing – a critical resource for tens of thousands of households.").

[6] The 110th Congress, in session since January 2007, has already held more than half a dozen hearings on post-hurricane housing assistance matters. *See, e.g.*, *Beyond Trailers, Part I: Creating a More Flexible, Efficient, and Cost-Effective Federal Disaster Housing Program: Hearing Before the Ad Hoc Subcomm. on Disaster Recovery of the S. Comm. on Homeland Security & Governmental Affairs*, 110th Cong. (Apr. 24, 2007); *GAO's Analysis of the Gulf Coast Recovery: A Dialogue on Removing Obstacles to the Recovery Effort: Hearing Before the Ad Hoc Subcomm. on Disaster Recovery of the S. Comm. on Homeland Security & Governmental Affairs*, 110th Cong. (Apr. 12, 2007); *Oversight of Department of Housing & Urban Development: Hearing Before the H. Comm. on Financial Servs.*, 110th Cong. (Mar. 14,

housing needs of low-income families affected by the hurricanes.[7]  The records requested by

LDF's FOIA request are likely to be informative regarding legislative consideration of solutions

to post-hurricane housing redevelopment problems in the Gulf states, which further demonstrates

that LDF's FOIA request concerns a matter of current exigency to the American public.  *See*

*Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260 (finding that the urgency element

was met because the plaintiff's FOIA request could inform a current legislative debate:

"Plaintiff's FOIA requests could have a vital impact on development of the substantive record in

favor of re-authorizing or making permanent the special provisions of the Voting Rights Act.");

*see also Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 42 (noting "recent hearings before the Senate

Judiciary Committee" on the same subject as the plaintiff's FOIA request as evidence of that the

request involved a matter of current exigency).

      Second, HUD's continued delay in responding to Plaintiff's FOIA request compromises

significant recognized interests.  The unavailability of the requested records makes it difficult to

ascertain whether HUD and the state grantees are following the reporting, monitoring, and

certification requirements of the Appropriations Acts.  The purpose of many of these statutory

---

2007); *Insurance Claims Payment Processes in the Gulf Coast after the 2005 Hurricanes: Hearing Before the Subcomm. on Oversight & Investigations of the H. Comm. on Financial Servs.*, 110th Cong. (Feb. 28, 2007); *Solving the Affordable Housing Crisis in the Gulf Region Post Katrina: Why No Progress and What Are the Obstacles to Success?: Field Hearing Before the Subcomm. on Housing & Community Opportunity of the H. Comm. on Financial Servs.*, 110th Cong. (Feb. 22-23, 2007); *Federal Housing Response to Hurricane Katrina: Hearing Before the H. Comm. on Financial Servs.*, 110th Cong. (Feb. 6, 2007); *Hurricanes Katrina & Rita: Outstanding Need, Slow Progress: Hearing Before the S. Comm. on Homeland Security & Governmental Affairs*, 110th Cong. (Jan. 29, 2007).

[7] *See, e.g.*, Workforce Housing Construction for the GO Zone Act of 2007, S. 1180, 110th Cong. (as referred to S. Comm. on Finance, Apr. 20, 2007); Katrina Housing Tax Relief Act of 2007, H.R. 1562, 110th Cong. (as passed by House, Mar. 27, 2007); Gulf Coast Hurricane Housing Recovery Act of 2007, H.R. 1227, 110th Cong. (as passed by House, Mar. 21, 2007); Federal Housing Finance Reform Act of 2007, H.R. 1427, 110th Cong. (as referred to H. Comm. on Financial Servs., Mar. 9, 2007).

and regulatory requirements, of course, is to ensure that the intended beneficiaries of the $17

billion CDBG Disaster Recovery Grant program – including primarily low- and moderate-

income families – actually receive the benefit of those funds.  Plaintiff and the public are entitled

to determine whether and how HUD is assuring that "maximum feasible priority" in the use of

Disaster Recovery Grant funds is being given, as required, to activities that will benefit low- and

moderate-income persons.  71 Fed. Reg. 7666, 7671 (Feb. 13, 2006); *see also* 71 Fed. Reg.

63,337, 63,339 (Oct. 30, 2006).

      In addition, delay in processing the requested records renders it difficult or impossible for

Plaintiff to discern whether civil rights and nondiscrimination requirements are being met,

including the requirement imposed by the Fair Housing Act that HUD administer all of its

programs in a manner that affirmatively furthers fair housing.  *See* 42 U.S.C. § 3608(e)(5); *see*

*also Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 211 (1972) (holding that assuring fair

housing is "a policy that Congress considered to be of the highest priority").  If the requested

records indicate that HUD is not meeting its obligations under the Fair Housing Act to promote

fair housing through the use of CDBG Disaster Recovery Grant funds, the continued delay in

processing Plaintiff's FOIA request allows that violation of civil rights requirements to continue.

If problems in program administration and oversight are allowed to go unrevealed, and therefore

potentially uncorrected, the resulting misallocation of funds could be irreversible.  Requirements

such as the obligation to prioritize low- and moderate-income persons, and the mandate to use

Disaster Recovery Grant funds to promote fair housing and equal opportunity, would be rendered

effectively unenforceable.

Finally, Plaintiff meets the "urgency to inform" standard because Plaintiff's FOIA request concerns federal government activity, namely, the administration by a United States executive agency of a federally-funded disaster relief program.

Because Plaintiff thus has a "compelling need" for the requested records, Plaintiff has demonstrated a likelihood of success on the merits sufficient to justify the grant of a preliminary injunction.  Plaintiff's motion for such relief should, therefore, be granted.

### C.    A Balance Of Hardships Clearly Favors Plaintiff.

LDF is entitled to a preliminary injunction because it easily satisfies the standard of showing "sufficiently serious questions going to the merits" plus a "balance of hardships tipping decidedly toward the party requesting the preliminary relief."[8]  *See Fed. Express Corp.*, 201 F.3d at 173 (holding that preliminary injunctive relief is warranted where the movant shows irreparable harm and *either* likelihood of success on the merits, *or* sufficiently serious questions going to the merits plus a balance of hardships in the movant's favor).  The discussion in Part I.B above, demonstrating Plaintiff's likelihood of success on the merits, also demonstrates that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Id.*

In addition, the balance of hardships is decidedly in Plaintiff's favor.  FOIA not only recognizes that the public interest is served by disclosure of government records, but that there is

---

[8] Although some courts have been reluctant to apply the lesser "serious questions / balance of hardships" standard when a preliminary injunction is sought against governmental action, the Second Circuit has held that this lesser standard is proper where the movant asserts a "claim on the public interest" and seeks to compel government compliance with a regulatory or statutory standard.  *Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1326, 1338-39 (2d Cir. 1992) ("[T]he 'likelihood of success' prong need not always be followed merely because a movant seeks to enjoin government action."), *vacated as moot on other grounds by Sale v. Haitian Centers Council, Inc.*, 509 U.S. 918 (1993); *see also Patton v. Dole*, 806 F.2d 24, 30 (2d Cir. 1986).  Of course, if the Court agrees with Plaintiff that there is a likelihood of success on the merits, preliminary injunctive relief is warranted and the Court need not address whether the "serious questions / balance of hardships" standard has been met.

a public interest in prompt disclosure.  Where agency records shed light on potentially

controversial current operations of the government, delay in releasing the records frustrates the

public interests served by the statute just as would an outright denial.  It is a well-settled

principle of FOIA that "excessive delay by the agency in its response is often tantamount to

denial."  *Edmonds*, 417 F.3d at 1324 (quoting the legislative record of the 1974 FOIA

amendments).  If there are practical difficulties that federal agencies must address in responding

to expedited requests for public records, those difficulties are a result of nothing other than the

statutory scheme, in which Congress clearly expressed its intent that agencies have ten days to

respond to requests for expedition, with processing of expedited requests to be conducted as soon

as practicable.  *See* 5 U.S.C. §§ 552(a)(6)(E)(ii)(I); 552(a)(6)(E)(iii).  Indeed, for a court to hold

that responding to Plaintiff's request for expedition within the time period established by

Congress posed any undue hardship on Defendant would be to excise the expedited processing

provisions from the text of the statute.  *See Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035,

1041 (9th Cir. 1999) ("So long as the Freedom of Information Act is the law, we cannot repeal it

by a construction that vitiates any practical utility it may have.").

In addition, there are significant hardships to Plaintiff that attend HUD's failure to

process Plaintiff's FOIA request.  As noted above in Part I.A, Plaintiff is harmed by Defendant's

delay not only because Plaintiff has lost its statutory right to expedition, but also because

Plaintiff is precluded from accessing the information necessary to inform the public regarding

the civil rights implications of HUD's administration of a multi-billion dollar housing program.

The balance of hardships thus favors expedited processing of LDF's FOIA Request,

particularly in light of the overwhelming public interest in the records sought.  Injunctive relief

would impose no burden on HUD beyond that contemplated by FOIA.  Nor would injunctive

relief impose any uncontemplated burden on the interests of other requesters who have submitted FOIA requests to HUD, because FOIA expressly provides that expedited requests will take precedence over those requests that do not warrant expedited processing.  The subordination of non-expedited requests is a consequence of the statutory scheme.

In light of the significant interests set forth by Plaintiff, and the corresponding lack of equities in Defendant's failure to respond to Plaintiff's FOIA request, a preliminary injunction is clearly warranted.  This Court should compel HUD to process LDF's FOIA request immediately.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Preliminary Injunction, compel HUD to process Plaintiff's FOIA Request on an expedited basis, and direct HUD to produce all available responsive documents, as well as a *Vaughn* index for any documents claimed to be exempt from disclosure, by May 24, 2007.

Dated: April 27, 2007
New York, NY

Respectfully submitted,

Theodore M. Shaw, Director-Counsel

Matthew Colangelo (MC-1746)
Robert H. Stroup
Damon Hewitt
NAACP LEGAL DEFENSE AND
  EDUCATIONAL FUND, INC.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2200

Lawrence S. Lustberg (LL-1644)
Melanca D. Clark (MC-0908)
GIBBONS, P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

Attorneys for Plaintiff

19