UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Defendant. | Civil Action No. 07-3378 (GEL) |

**PLAINTIFF'S STATEMENT OF UNDISUTED FACTS PURSUANT TO
LOCAL CIVIL RULE 56.1(a)**

Plaintiff NAACP Legal Defense & Educational Fund, Inc. respectfully submits this Statement of Undisputed Facts pursuant to Local Civil Rule 56.1(a).

1.  The CDBG Disaster Recovery Grant program was funded through two appropriations statutes that were passed in the months after Hurricanes Katrina and Rita. *See* ¶¶ 2-3 below.

2.  The first statute, named the "Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006," Pub. L. No. 109-148, 119 Stat. 2680 (Dec. 30, 2005), appropriated $11.5 billion to the five affected states (Louisiana, Mississippi, Texas, Florida, and Alabama) for CDBG Disaster Recovery Grants. *See* 119 Stat. at 2779-81.

3.  The second statute, named the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Hurricane Recovery, 2006," Pub. L. No. 109-234, 120

Stat. 418 (June 15, 2006), appropriated an additional $5.2 billion to the same states. *See* 120 Stat. at 472-73.

4. The CDBG Disaster Recovery Grant program authorized by these two appropriations statutes amounts to a combined total of $16.7 billion; Louisiana and Mississippi together received over 95% of the appropriated amount. *See* 71 Fed. Reg. 7666, 7666 (Feb. 13, 2006); 71 Fed. Reg. 63,337, 63,338 (Oct. 30, 2006).

5. The two statutes establishing the Disaster Recovery Grant program adopt the general framework that governs the regular Community Development Block Grant ("CDBG") program, but also authorize HUD, upon request from a state, to waive many CDBG program requirements – except for those relating to nondiscrimination, fair housing, labor standards, and the environment. *See* 119 Stat. at 2780; 120 Stat. at 472-73.

6. The Acts allow HUD to require that only 50% of funds benefit low- and moderate-income persons (as opposed to the normal 70% CDBG requirement, see 42 U.S.C. § 5301(c)), or to eliminate the requirement entirely on a finding of "compelling need." *See* 119 Stat. at 2780; 120 Stat. at 473.

7. The Acts require each state to submit an action plan in advance of the receipt of grant funds that details the state's intended uses of those funds, and to submit a quarterly report to the Senate and House Committees on Appropriations reporting on all awards and uses of funds. *See* 119 Stat. at 2780; 120 Stat. at 473.

8. HUD has by regulation required grantees to meet public participation, reporting, and oversight requirements as well as to certify that they are in compliance with civil rights mandates. *See* 71 Fed. Reg. 7666 (Feb. 13, 2006); 71 Fed. Reg. 63,337 (Oct. 30, 2006).

9. On March 19, 2007, LDF submitted a FOIA request to HUD by overnight mail. *See* Ex. 2 (LDF FOIA Request).[1]

10. LDF's FOIA request sought certain records concerning HUD's administration of the CDBG Disaster Recovery Grant program as to the states of Louisiana and Mississippi. *Id.* The categories of records sought included records relating to grantee requests for program waivers, HUD's decisions to approve requested waivers, mandatory certifications and reports from state grantees, data regarding the race and income level of applicants for Disaster Recovery Grant funds, studies regarding the administration of the program, and communications from or to Congress. *Id.*

11. Paragraph three of LDF's request sought "[a]ll records relating to any studies conducted by the HUD Office of the Inspector General regarding HUD's administration of, or any state grantee's administration of, the CDBG Disaster Recovery Grant program." *Id.* at 4 ¶ 3.

12. LDF's FOIA request included a request for expedited processing and a waiver of fees pursuant to FOIA and HUD's FOIA regulations. *See id.* at 5-8.

13. LDF subsequently narrowed its request to those OIG records regarding Disaster Recovery Grant administration by HUD and the states of Louisiana and Mississippi (excluding records regarding grant administration by HUD and all five state grantees). *See* Ex. 5 (Letter from Clark to Eshkenazi of 5/21/07, at 2).

14. HUD received LDF's FOIA request on March 21, 2007. *See* Ex. 3 (Letter from O'Connor to Colangelo of 3/22/07, at 1).

15. Because the HUD Office of the Inspector General has its own staff to process FOIA requests, separate from the Department's FOIA office, HUD forwarded LDF's request to

---

[1] All references in this Memorandum to "Ex. __" are to the exhibits to the accompanying Declaration of Matthew Colangelo, filed herewith.

its Office of the Inspector General ("OIG") to respond to paragraph three. *See* Ex. 4 (Letter from Hall to Colangelo of 4/30/07, at 1).

16. OIG received LDF's request on April 11, 2007. *See id.*; Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1).

17. Neither HUD nor OIG responded to LDF's request for expedited processing within ten days, as required by law. *See* 5 U.S.C. § 552(a)(6)(E).

18. LDF initiated this lawsuit on April 27, 2007, and filed an Order to Show Cause why preliminary injunctive relief should not be granted. *See* Compl. (Doc. No. 1 on the docket of this action); Order to Show Cause (Doc. No. 3); Mem. Supp. Prelim. Inj. (Doc. No. 4).

19. When LDF filed its complaint on April 27, more than ten days had passed both from the date the Department received the request and from the date OIG received the request. *See* Ex. 3 (Letter from O'Connor to Colangelo of 3/22/07, at 1) (acknowledging that the Department received LDF's FOIA request on March 21); Ex. 4 (Letter from Hall to Colangelo of 4/30/07, at 1) (acknowledging that OIG received LDF's FOIA request on April 11); Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1) (same).

20. In a Stipulation and Order that was signed by the Court on May 10, 2007, the parties agreed to a schedule for the release of records sought in paragraphs one, two, four, and five of LDF's FOIA request. *See* Stipulation & Order (Doc. No. 11 on the docket of this action).

21. The Stipulation did not resolve LDF's claims before this Court regarding the release of records sought in paragraph three, which sought OIG records. *See id.* ¶ 5 ("HUD has referred paragraph number 3 of the FOIA request to the HUD Office of the Inspector General.").

22.     On June 20, 2007, OIG alerted LDF to two analyses that were responsive to paragraph three of the March 19 request and that had not previously been disclosed. *See* Ex. 6 (Letter from Johnson to Clark of 6/20/07, at 2)

23.     OIG identified these records as analyses of state action plans conducted by two OIG offices: (1) the Office of Audit, Disaster Oversight and Liaison Division, and (2) the Office of Investigations, Disaster Relief Oversight Division. *Id.*

24.     On June 29, 2007, OIG made a partial disclosure of the records identified in the June 20 letter. *See* Ex. 7 (Letter from Hall to Clark of 6/29/07).

25.     OIG noted that the responsive records from the Office of Audit (the "Audit Records") included 133 pages, but that it would only disclose 88 of those pages. *Id.* at 1.

26.     OIG gave the following explanation for its refusal to disclose all 133 pages of the Audit Records: "Certain information was withheld from this material pursuant to 5 U.S.C. § 552(b)(5) and (b)(6) which protect intra-agency communications subject to the deliberative process privilege and materials the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. For your information, the withheld material consists of pre-decisional discussions or comments reflecting staff evaluations and opinions, draft material, and telephone numbers." *Id.*

27.     OIG also noted that the responsive records from the Office of Investigations (the "Investigative Records") included 50 pages, but that it would only disclose 42 pages. *Id.*

28.     OIG gave the following explanation for its refusal to disclose all 50 pages of the Investigative Records: "Certain information was withheld from this material pursuant to 5 U.S.C. § 552(b)(5) and (b)(7)(C) which protect intra-agency communications subject to the deliberative and attorney-client process privileges and materials the disclosure of which would constitute a

clearly unwarranted invasion of personal privacy. For your information, the withheld material consists of pre-decisional discussions or comments reflecting staff evaluations and opinions, and the names and telephone numbers of the special agents." *Id.*

29. Those portions of the Audit Records and Investigative Records that OIG did disclose include four documents that are heavily redacted. *See* Ex. 8 (First Excerpt from Audit Records); Ex. 9 (Second Excerpt from Audit Records); Ex. 10 (First Excerpt from Investigative Records); Ex. 11 (Second Excerpt from Investigative Records).

30. In each of the four redacted documents, there is a handwritten notation of "b5" in the margin next to certain redacted passages to note Defendant's assertion that Exemption Five applies. *See* Ex. 8 (First Excerpt from Audit Records); Ex. 9 (Second Excerpt from Audit Records); Ex. 10 (First Excerpt from Investigative Records); Ex. 11 (Second Excerpt from Investigative Records).

31. Exhibit 8 is an OIG document addressing an amended version of Louisiana's Action Plan for its Road Home Housing Program, and is titled: "HUD OIG Office of Audit Review and Concerns, STATUS as of 04/27/06." *See* Ex. 8 (First Excerpt from Audit Records). The document is divided into sections that describe components of Louisiana's proposed plan, and contains a subsection within each program description titled "Concerns." *Id.* Defendant has redacted all text contained under the "Concerns" sections of Exhibit 8, claiming the protection of FOIA Exemption Five. *Id.*

32. Exhibit 9 is an OIG document addressing Mississippi's Partial Action Plan for its Homeowner Assistance Program, and is titled: "HUD OIG Office of Audit Review and Concerns, STATUS as of 04/27/06." *See* Ex. 9 (Second Excerpt from Audit Records).

6

Defendant has redacted several pages of text in Exhibit 9 under the heading "Concerns," indicating that it believes Exemption Five applies.  *Id.*

33.     Exhibit 10 is a memorandum dated February 7, 2007, from Larry Amaker in the Office of the Inspector General, noting Louisiana's decision to create a $138 million business recovery loan program with its Disaster Recovery Grant funds.  *See* Ex. 10 (First Excerpt from Investigative Records).  The memorandum notes that "[i]n reviewing the program, several concerns regarding due diligence presented themselves to us."  *Id.*  The next two paragraphs are redacted, pursuant to the claimed Exemption Five, and the first sentence after the redacted portion states:  "We hope that you can use your office to correct the application process, before large scale fraud is committed against the program."  *Id.*

34.     Exhibit 11 is an OIG email dated January 31, 2007, with the subject line "Re: Small Business Recovery Loans."  *See* Ex. 11 (Second Excerpt from Investigative Records).  The entire body of the message is redacted per claimed Exemption Five.  *Id.*  The email is a response to an email about the $138 million Louisiana business recovery loan program.  *Id.*

35.     Defendant did not produce *Vaughn* indices describing either the undisclosed pages or the redacted portions of the disclosed pages.

36.     Defendant did not assert that it has disclosed all reasonably segregable non-exempt portions of the responsive records.

Dated: July 26, 2007
New York, NY

Respectfully submitted,

Theodore M. Shaw, Director-Counsel

Matthew Colangelo (MC-1746)
Robert H. Stroup
Damon Hewitt
NAACP LEGAL DEFENSE AND
 EDUCATIONAL FUND, INC.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2200

Lawrence S. Lustberg (LL-1644)
Melanca D. Clark (MC-0908)
GIBBONS, P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

Attorneys for Plaintiff