## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.,

Plaintiff,

v.                                                    Civil Action No. 07-3378 (GEL)

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT,

Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff NAACP Legal Defense & Educational Fund, Inc. respectfully submits this

Memorandum of Law in support of its Motion for Partial Summary Judgment.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 2

I.      The CDBG Disaster Recovery Grant Program ................................................. 2

II.     LDF's FOIA Request ..................................................................................... 3

ARGUMENT ............................................................................................................... 6

I.      Review of OIG's Inadequate Response is Proper in this Court ......................... 6

II.     The Freedom of Information Act ..................................................................... 7

III.    Defendant Has Not Met Its Burden Of Proving the Applicability of Exemption Five to Responsive Records. ........................................................................... 9

     A.    Defendant Has Not Met Its Burden of Showing that Exemption Five Applies to the Undisclosed Portions of the Audit Records and Investigative Records. ................................................................... 9

     B.    Defendant Has Not Met Its Burden of Showing that Exemption Five Applies to the Redacted Passages of the Audit Records and Investigative Records. ........................................................................................... 12

           1.    Defendant Has Not Shown that the Redacted Passages Are Exempt From Disclosure Under the Deliberative Process Privilege. ................... 13

           2.    Defendant Has Not Shown that the Redacted Passages Are Exempt From Disclosure Under the Attorney-Client Privilege ........................... 16

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Coastal States Gas Corp. v. Department of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .............................................................................. 13, 15, 16, 17

*Department of the Air Force v. Rose*,
    425 U.S. 352 (1976) .............................................................................................. 8, 17

*Department of the Interior v. Klamath Water Users Protective Association*,
    532 U.S. 1 (2001) .............................................................................................. 12

*EPA v. Mink*,
    410 U.S. 73 (1973) .............................................................................................. 7

*Fisher v. United States*,
    425 U.S. 391 (1976) .............................................................................................. 13

*Founding Church of Scientology of Washington, D.C., Inc. v. Bell*,
    603 F.2d 945 (D.C. Cir. 1979) .......................................................................... 9, 11, 17

*FTC v. Grolier Inc.*,
    462 U.S. 19 (1983) .............................................................................................. 12

*Grand Central Partnership, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) .............................................................................................. 16

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999) ........................................................................ 7, 9, 11, 17

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) .............................................................................................. 7

*Local 3, International Brotherhood of Electrical Workers v. NLRB*,
    845 F.2d 1177 (2d Cir. 1988) .............................................................................................. 8

*Megibow v. Clerk of U.S. Tax Court*,
    2004 WL 1961951 (S.D.N.Y. Aug. 31, 2004) ........................................................................ 6

*National Cable Television Association v. FCC*,
    479 F.2d 183 (D.C. Cir. 1973) .............................................................................................. 8

*National Council of La Raza v. Department of Justice*,
    411 F.3d 350 (2d Cir. 2005) .............................................................................................. 12, 13

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) .............................................................................................. 12, 13

*Parke, Davis & Co. v. Califano*,
   623 F.2d 1 (6th Cir. 1980) ............................................................................... 11

*Ruotolo v. Department of Justice, Tax Division*,
   53 F.3d 4 (2d Cir. 1995) ............................................................................... 7, 8

*SafeCard Services, Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ...................................................................... 15

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989) ........................................................................................ 8

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ............................................................... 6, 9, 11

## STATUTES AND REGULATIONS

5 U.S.C. § 552 ................................................................................................... 1

5 U.S.C. § 552(a) .............................................................................................. 7

5 U.S.C. § 552(a)(4)(B) .................................................................................. 6, 8

5 U.S.C. § 552(a)(6)(E) ..................................................................................... 4

5 U.S.C. § 552(a)(6)(E)(ii)(I) ........................................................................... 7

5 U.S.C. § 552(a)(6)(E)(iii) .............................................................................. 7

5 U.S.C. § 552(b) ............................................................................................ 10

5 U.S.C. § 552(b)(5) ............................................................................ 6, 7, 10, 12

5 U.S.C. § 552(b)(6) ............................................................................... 6, 10, 11

5 U.S.C. § 552(b)(7)(C) .......................................................................... 6, 10, 11

28 U.S.C. § 1331 ............................................................................................... 6

42 U.S.C. § 5301(c) ........................................................................................... 3

Department of Defense, Emergency Supplemental Appropriations to
   Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza
   Act, 2006, Pub. L. No. 109-148, 119 Stat. 2680 (Dec. 30, 2005) ............................ 2

Emergency Supplemental Appropriations Act for Defense, the Global
   War on Terror, and Hurricane Recovery, 2006, Pub. L. No. 109-234,
   120 Stat. 418 (June 15, 2006) .......................................................................... 2

## **REGULATIONS**

24 C.F.R. § 91.2(a) .......................................................................................................... 13

24 C.F.R. § 91.5 .............................................................................................................. 13

24 C.F.R. § 91.15(b) ....................................................................................................... 13

24 C.F.R. § 91.300 .......................................................................................................... 13

24 C.F.R. § 91.320 .......................................................................................................... 13

24 C.F.R. § 91.330 .......................................................................................................... 13

71 Fed. Reg. 7666 (Feb. 13, 2006) ............................................................................. 2, 14

71 Fed. Reg. 63,337 (Oct. 30, 2006) ............................................................................... 2

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ......................................................................................................... 8

Shaila Dewan, *Patchwork City: Road to New Life After Katrina is Closed to Many*,
   N.Y. Times, July 12, 2007 ........................................................................................... 2

**INTRODUCTION**

Plaintiff, the NAACP Legal Defense and Educational Fund, Inc. ("LDF"), respectfully submits this Memorandum of Law in support of Plaintiff's Motion for Partial Summary Judgment.  LDF seeks the immediate disclosure of agency records, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which have been unlawfully withheld by Defendant the United States Department of Housing and Urban Development ("HUD").

This case involves LDF's ongoing efforts to obtain access to records pertaining to Defendant's administration of the CDBG Disaster Recovery Grant Program, a $16.7 billion Community Development Block Grant allocated by Congress for necessary expenses related to disaster relief, long-term recovery, and rebuilding expenses in those areas of the Gulf of Mexico most affected by Hurricanes Katrina and Rita in 2005.  At issue in the present motion are records sought from HUD's Office of the Inspector General ("OIG").  Defendant has refused to disclose certain OIG records, and has redacted portions of those OIG records that it did disclose, with no legally supportable justification.

The use of CDBG Disaster Recovery Grant funds for housing redevelopment in affected areas of the Gulf states is of overwhelming significance to the hundreds of thousands of families who remain displaced by the 2005 hurricanes.  Transparent administration of this major federal program is also critical to the public's ability to evaluate whether the program is being administered in compliance with federal law, and specifically, whether the intended beneficiaries of the Disaster Recovery Grant program – primarily low- and moderate-income families – actually receive the benefit of those funds.[1]  The inability to ensure that statutory and regulatory

---

[1] Based on anecdotal evidence, low-income and minority renters impacted by Hurricanes Katrina and Rita have experienced difficulty in securing access to federally financed disaster recovery funds. *See* Ex. 1 (Shaila Dewan, *Patchwork City: Road to New Life After Katrina is Closed to*

requirements are being met carries the risk that Disaster Recovery Grant funds will be misdirected, with the result that the intended beneficiaries of the program – poor families from areas affected by the hurricanes – may not receive the housing redevelopment assistance that they need and that Congress intended be available to them.

## **FACTUAL BACKGROUND**

### I.    **The CDBG Disaster Recovery Grant Program.**

The CDBG Disaster Recovery Grant program was funded through two appropriations statutes that were enacted in the months after Hurricanes Katrina and Rita.  The first statute, denominated the "Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006," Pub. L. No. 109-148, 119 Stat. 2680 (Dec. 30, 2005), appropriated $11.5 billion to the five affected states (Louisiana, Mississippi, Texas, Florida, and Alabama) for CDBG Disaster Recovery Grants.  *See* 119 Stat. at 2779-81.  The second statute, the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Hurricane Recovery, 2006," Pub. L. No. 109-234, 120 Stat. 418 (June 15, 2006), appropriated an additional $5.2 billion to the same states.  *See* 120 Stat. at 472-73. The CDBG Disaster Recovery Grant authorized by these two appropriations statutes amounts to a combined total of $16.7 billion; Louisiana and Mississippi together received over 95% of the appropriated amount.  *See* 71 Fed. Reg. 7666, 7669 (Feb. 13, 2006); 71 Fed. Reg. 63,337, 63,338 (Oct. 30, 2006).

The two statutes establishing the Disaster Recovery Grant program adopt the general framework that governs Community Development Block Grant ("CDBG") program funds, but also authorize HUD, upon request from a state, to waive many CDBG program requirements –

---

*Many*, N.Y. Times, July 12, 2007, at A1).  All references in this Memorandum to "Ex. __" are to the exhibits to the accompanying Declaration of Matthew Colangelo, filed herewith.

except for those relating to nondiscrimination, fair housing, labor standards, and the environment. *See* 119 Stat. at 2780; 120 Stat. at 472-73. The Acts allow HUD to require that only 50% of funds benefit low- and moderate-income persons (as opposed to the normal 70% CDBG requirement, *see* 42 U.S.C. § 5301(c)), or even to eliminate the requirement entirely on a finding of "compelling need." *See* 119 Stat. at 2780; 120 Stat. at 473. And the Acts require each state to submit an action plan in advance of the receipt of grant funds that details the state's intended uses of those funds, and to submit a quarterly report to the Senate and House Committees on Appropriations reporting on all awards and uses of funds. *See* 119 Stat. at 2780; 120 Stat. at 473. HUD has by regulation required grantees to meet public participation, reporting, and oversight requirements as well as to certify that they are in compliance with civil rights mandates. *See* 71 Fed. Reg. 7666 (Feb. 13, 2006); 71 Fed. Reg. 63,337 (Oct. 30, 2006).

## II.    <u>LDF's FOIA Request.</u>

On March 19, 2007, LDF submitted a FOIA request to HUD by overnight mail. *See* Ex. 2 (LDF FOIA Request). LDF's request sought certain records concerning HUD's administration of the CDBG Disaster Recovery Grant program as to the states of Louisiana and Mississippi. The categories of records sought included records relating to grantee requests for program waivers, HUD's decisions to approve requested waivers, mandatory certifications and reports from state grantees, data regarding the race and income level of applicants for Disaster Recovery Grant funds, studies regarding the administration of the program, and communications from or to Congress. *See id.* As pertinent to the present motion for summary judgment, paragraph three of LDF's request sought "[a]ll records relating to any studies conducted by the HUD Office of the Inspector General regarding HUD's administration of, or any state grantee's administration of,

the CDBG Disaster Recovery Grant program."[2]  *Id.* at 4, ¶ 3.  The FOIA request also included a request for expedited processing and a waiver of fees pursuant to FOIA and HUD's FOIA regulations.  *See id.* at 5-8.

HUD received LDF's FOIA request on March 21, 2007.  *See* Ex. 3 (Letter from O'Connor to Colangelo of 3/22/07, at 1).  Because the HUD Office of the Inspector General has its own staff to process FOIA requests, separate from the Department's FOIA office, HUD forwarded LDF's request to its Office of the Inspector General ("OIG") to respond to paragraph three.  *See* Ex. 4 (Letter from Hall to Colangelo of 4/30/07, at 1).  OIG received LDF's request on April 11, 2007.  *See id.*; Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1).

Neither HUD nor OIG responded to LDF's request for expedited processing within ten days, as required by law.  *See* 5 U.S.C. § 552(a)(6)(E).  Because of the urgency of receiving the requested information, LDF initiated this lawsuit on April 27, 2007, and filed an Order to Show Cause why preliminary injunctive relief should not be granted.  *See* Compl. (Doc. No. 1 on the docket of this action); Order to Show Cause (Doc. No. 3); Mem. Supp. Prelim. Inj. (Doc. No. 4).

In a Stipulation and Order that was signed by the Court on May 10, 2007, the parties agreed to a schedule for the release of records sought in paragraphs one, two, four, and five of LDF's FOIA request.  *See* Stipulation & Order (Doc. No. 11).  The Stipulation did not resolve LDF's claims before this Court regarding the release of records sought in paragraph three, seeking OIG records.  *See id.* ¶ 5 ("HUD has referred paragraph number 3 of the FOIA request to the HUD Office of the Inspector General.").

---

[2] LDF subsequently narrowed its request to those OIG records regarding Disaster Recovery Grant administration by HUD and the states of Louisiana and Mississippi (instead of records regarding grant administration by HUD and all five state grantees).  *See* Ex. 5 (Letter from Clark to Eshkenazi of 5/21/07, at 2).

Since the date of filing of LDF's lawsuit, LDF and OIG have had extensive communications in an effort to resolve this issue in a cooperative instead of adversarial manner. The parties continue to discuss a number of topics concerning the processing of LDF's request to OIG – including the proper scope of LDF's request, the timing of the production of responsive records, and the appropriateness of a fee waiver – and Plaintiff does not here bring every unresolved issue to the Court. As to one portion of the dispute between LDF and OIG, however, OIG's response to LDF's request requires that Plaintiff respectfully seek the Court's intervention at this time.

Specifically, on June 20, 2007, OIG alerted LDF to two analyses that were responsive to paragraph three of the March 19 request and that had not previously been disclosed. *See* Ex. 6 (Letter from Johnson to Clark of 6/20/07, at 2). OIG identified these records as analyses of state action plans conducted by two OIG offices: (1) the Office of Audit, Disaster Oversight and Liaison Division, and (2) the Office of Investigations, Disaster Relief Oversight Division. *Id.* The June 20 letter noted that OIG would process the analyses and disclose them the following week. *Id.*

On June 29, 2007, OIG made a partial disclosure of the records identified in the June 20 letter. OIG noted that the responsive records from the Office of Audit (the "Audit Records") included 133 pages, but that it would only disclose 88 of those pages. Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1). OIG also noted that the responsive records from the Office of Investigations (the "Investigative Records") included 50 pages, but that it would only disclose 42 pages. *Id.* Those portions of the Audit Records and Investigative Records that OIG did disclose include four documents that are heavily redacted. *See* Ex. 8 (First Excerpt from Audit Records); Ex. 9 (Second Excerpt from Audit Records); Ex. 10 (First Excerpt from Investigative Records);

Ex. 11 (Second Excerpt from Investigative Records). OIG made general reference in its June 29 letter to its belief that exemptions from disclosure apply pursuant to 5 U.S.C. § 552(b)(5) on the ground of deliberative process and/or attorney-client privilege, and pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C) on the ground of protecting against invasion of personal privacy. But OIG did not produce *Vaughn* indices[3] describing either the undisclosed pages or the redacted portions of the disclosed pages.

Plaintiff here moves for Partial Summary Judgment in order to challenge Defendant's decision to withhold multiple pages from the Audit Records and Investigative Records, and to redact portions of the documents that were disclosed. For the reasons set forth below, that motion should be granted.

## ARGUMENT

### I.    Review of OIG's Inadequate Response is Proper in this Court.

First, of course, this matter is properly before this Court. Subject matter jurisdiction exists pursuant to federal question jurisdiction and the jurisdictional provision of the FOIA statute. *See* 28 U.S.C. § 1331; 5 U.S.C. § 552(a)(4)(B); *see also Megibow v. Clerk of U.S. Tax Court*, 2004 WL 1961951, at *2 (S.D.N.Y. Aug. 31, 2004) ("Here, [the plaintiff] asserts a claim arising under FOIA, a federal statute. The Court clearly has jurisdiction to hear that claim."). In addition, any administrative exhaustion requirement has been met: as noted, LDF submitted its FOIA request on March 19, 2007, *see* Ex. 2 (LDF FOIA Request), and the Department forwarded LDF's request to its Office of the Inspector General in connection with paragraph three of the request, which OIG received on April 11. *See* Ex. 4 (Letter from Hall to Colangelo

---

[3] A *Vaughn* index (which is required by law, as discussed below in detail) is an itemized index describing all documents or portions of documents that are alleged by the agency to fall within one of FOIA's statutory exemptions from disclosure, including a statement and explanation of the claimed exemption with sufficient specificity to permit a reasoned judgment as to whether the material is actually exempt. *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

of 4/30/07, at 1); Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1).  Because LDF's request sought expedited processing, the agency was required to determine whether to provide expedited processing and to notify LDF of that determination within ten days.  *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I).

When LDF filed its complaint on April 27, more than ten days had passed both from the date the Department received the request and from the date OIG received the request.  Any administrative exhaustion requirement must therefore be deemed met.  *See Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 8-9 (2d Cir. 1995) (holding that the plaintiffs were "deemed to have exhausted their administrative remedies" because the agency failed to provide a timely determination of the plaintiffs' FOIA request); *see also* 5 U.S.C. § 552(a)(6)(E)(iii) (providing that the failure of an agency to respond within ten days to a request for expedited processing is subject to judicial review).

## II.    <u>The Freedom of Information Act.</u>

FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999).  The statute was designed "to permit access to official information long shielded unnecessarily from public view and . . . to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)).  FOIA therefore directs government agencies to disclose certain types of records and describes the manner of disclosure required, *see* 5 U.S.C. § 552(a), while setting forth the specific categories of records exempted from disclosure. *Id.* § 552(b).  The exemption from the disclosure requirement that is implicated in the present dispute is the exemption for deliberative process or attorney-client privilege, § 552(b)(5) (Exemption Five).

The Supreme Court has held that the "limited exemptions" contained in the statute "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). As a result, statutory exemptions from the FOIA disclosure requirement must be "narrowly construed with all doubts resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). This Court's review of the agency's determination that an exemption applies is *de novo*, and the agency bears the burden of justifying its actions. 5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action,' and directs the district courts to 'determine the matter de novo.'") (quoting 5 U.S.C. § 552(a)(4)(B)).

A party is entitled to summary judgment if there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In the FOIA context, the defending agency has the burden of showing on summary judgment "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."[4] *Ruotolo*, 53 F.3d at 9 (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

---

[4] For purposes of the present motion, Plaintiff challenges Defendant's assertion of exemptions from disclosure. Plaintiff is unable yet to determine whether Defendant has met its burden of showing that its search for responsive records was adequate, *see Ruotolo*, 53 F.3d at 9, because Defendant has given no description of the undisclosed pages from the Audit Records and Investigative Records. *See* Ex. 7 (Letter from Hall to Clark of 6/29/07). Plaintiff does not waive any arguments regarding the adequacy of OIG's search.

### III.    Defendant Has Not Met Its Burden Of Proving the Applicability of Exemption Five to Responsive Records.

#### A.    Defendant Has Not Met Its Burden of Showing that Exemption Five Applies to the Undisclosed Portions of the Audit Records and Investigative Records.

Plaintiff is entitled to summary judgment with regard to OIG's refusal to disclose numerous pages from the Audit Records and the Investigative Records. OIG's decision is based on an exceedingly cursory explanation that falls far short of complying with the requirements of the law.

In order to carry its burden of showing that an exemption from the disclosure requirement applies, an agency must submit an index that sets forth in detail the bases for the claimed exemption. *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). In light of the "innate impetus that encourages agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of information," an agency is not permitted to justify withholding documents on the basis of "conclusory and generalized allegations of exemptions," but must instead provide a FOIA requester with a "relatively detailed analysis in manageable segments" of all withheld material. *Id.* at 826; *see also Halpern*, 181 F.3d at 290-91. This detailed analysis – the *Vaughn* index – must adequately describe each withheld document or portion of a document, and must state the claimed exemption with sufficient specificity to "permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Agency affidavits submitted in support of an agency's assertion that a claimed exemption applies must set forth with "reasonable specificity" the nature of the documents at issue and the justification for non-disclosure; the affidavits must explain why the withheld information "logically falls within the claimed exemption." *Halpern*, 181 F.3d at 293.

9

In addition, even where portions of requested records may properly be exempt from disclosure, the agency is required to disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If the agency believes that a document contains non-exempt portions that are not reasonably segregable, it must provide a detailed justification for that determination, including a description of how the non-exempt portions are dispersed throughout the document, and what proportion of the document is non-exempt. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

As noted above, on June 29 OIG made a partial disclosure of two analyses responsive to Plaintiff's request: the Audit Records and the Investigative Records. With regard to the Audit Records, OIG noted that there were 133 responsive pages but that it would disclose only 88 pages. *See* Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1). OIG's entire explanation for the refusal to disclose all 133 pages was as follows:

> Certain information was withheld from this material pursuant to 5 U.S.C. § 552(b)(5) and (b)(6) which protect intra-agency communications subject to the deliberative process privilege and materials the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. For your information, the withheld material consists of pre-decisional discussions or comments reflecting staff evaluations and opinions, draft material, and telephone numbers.

*Id.* With regard to the Investigative Records, OIG noted that there were 50 responsive pages but that it would disclose only 42 pages. OIG's explanation for the refusal to disclose all 50 pages was as follows:

> Certain information was withheld from this material pursuant to 5 U.S.C. § 552(b)(5) and (b)(7)(C) which protect intra-agency communications subject to the deliberative and attorney-client process privileges and materials the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. For your information, the withheld material consists of pre-decisional discussions or comments reflecting staff evaluations and opinions, and the names and telephone numbers of the special agents.

*Id.*

The mere invocation of Exemption Five, with a two-sentence explanation that OIG believes the deliberative process privilege (for both sets of records) and/or the attorney-client privilege (for the Investigative Records) may apply, is wholly insufficient to meet OIG's obligation to justify its non-disclosure.[5]  OIG has not submitted an affidavit or declaration explaining the justification for its withholding that would permit "reasoned judgment" as to whether the withheld pages are actually exempt.  *See Founding Church of Scientology*, 603 F.2d at 949; *see also Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980) (in light of the "overwhelming thrust of FOIA . . . toward complete disclosure," Exemption Five claims must be supported with "specificity and [in] detail").  Indeed, OIG has submitted no affidavit or declaration at all.  In addition, OIG has not made any assertion as to whether it has disclosed all reasonably segregable non-exempt portions of the responsive records.  *See* 5 U.S.C. § 552(b).  The cursory explanation that Defendant provides is precisely the kind of "conclusory and generalized" allegation of exemption that FOIA does not permit.  *Vaughn*, 484 F.2d at 826; *see also Halpern*, 181 F.3d at 290-91.

Because Defendant has failed to meet its burden of demonstrating that the pages withheld from the Audit Records and Investigative Records are actually exempt, the Court should grant Plaintiff's Motion for Summary Judgment and order the disclosure of the withheld pages.

---

[5] Plaintiff does not intend to challenge OIG's withholding of staff telephone numbers from the undisclosed portions of the Audit Records pursuant to the personnel exemption for personal privacy, 5 U.S.C. § 552(b)(6), or the withholding of the names and telephone numbers of special agents from the undisclosed pages of the Investigative Records pursuant to the law enforcement exemption for personal privacy, 5 U.S.C. § 552(b)(7)(C).

**B.    Defendant Has Not Met Its Burden of Showing that Exemption Five Applies to the Redacted Passages of the Audit Records and Investigative Records.**

Plaintiff is additionally entitled to summary judgment with regard to OIG's decision to redact portions of those pages of the Audit Records and Investigative Records that OIG did disclose.  OIG's decision to redact portions of the disclosed records pursuant to Exemption Five is unsupported by OIG's minimal explanation.

Exemption Five permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  For a record to qualify for this exemption, "its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  The Supreme Court has explained that "[i]n keeping with the Act's policy of 'the fullest responsible disclosure,' Congress intended Exemption 5 to be 'as narro[w] as [is] consistent with efficient Government operation.'"  *FTC v. Grolier Inc.*, 462 U.S. 19, 23 (1983) (citations omitted) (quoting the legislative history) (alterations in original).

The privileges that Defendant has asserted in connection with the redacted portions of the documents at issue here are the deliberative process privilege (for both sets of records) and the attorney-client privilege (for the Investigative Records).  *See* Ex. 7 (Letter from Hall to Clark of 6/29/07, at 1).  The deliberative process privilege "is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials."  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).  Deliberative process covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *NLRB v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 150 (1975).  In invoking this privilege, Defendant bears the burden of showing that the document at issue is predecisional, in that it was "prepared in order to assist an agency decisionmaker in arriving at his decision," and deliberative, in that it was actually "related to the process by which policies are formulated." *La Raza*, 411 F.3d at 356; *see also Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76-77 (2d Cir. 2002).

The purpose of the attorney-client privilege "is to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  This privilege, however, "is narrowly construed and is limited to those situations in which its purposes will be served," *id.*, and "protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege." *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  Thus, in the FOIA context, this privilege protects an agency's confidential communications with its attorneys, provided that the communications are necessary to obtain informed legal advice. *See id.* at 862-64.

### 1.    Defendant Has Not Shown that the Redacted Passages Are Exempt From Disclosure Under the Deliberative Process Privilege.

The Audit Records contain two six-page documents, extensively redacted by Defendant, with a handwritten notation of "b5" next to redacted passages to indicate Defendant's assertion that Exemption Five applies.  The first document addresses an amended version of Louisiana's Action Plan[6] for its Road Home Housing Program, and is titled: "HUD OIG Office of Audit

---

[6] Typically, to receive CDBG funds, each grantee must develop and submit to HUD a planning document and funding application called the Consolidated Plan. *See* 24 C.F.R. §§ 91.2(a), 91.5. The Consolidated Plan is submitted every five years, with certain components re-submitted annually. *See id.* §§ 91.5, 91.15(b), 91.300-91.330.  Among the annual requirements is an Action Plan, which is a detailed accounting of how the jurisdiction will use the grant funds during the next year. *See id.* §§ 91.15(b)(1), 91.320.  HUD has waived the standard Action Plan

Review and Concerns, STATUS as of 04/27/06." *See* Ex. 8 (First Excerpt from Audit Records).

The document is divided into sections that describe components of Louisiana's proposed plan,

and contains a subsection within each program description titled "Concerns." *Id.* Defendant has

redacted all text contained under the "Concerns" sections of the document, claiming the

protection of FOIA Exemption Five. *Id.*

The second redacted document from the Audit Records, also entitled "HUD OIG Office

of Audit Review and Concerns, STATUS as of 04/27/06," addresses Mississippi's Partial Action

Plan for its Homeowner Assistance Program. *See* Ex. 9 (Second Excerpt from Audit Records).

Defendant has redacted several pages of text under the heading "Concerns," again apparently

indicating that it believes Exemption Five applies.

The Investigative Records contain two additional documents that are similarly redacted.

The first document is a memorandum dated February 7, 2007, from Larry Amaker in the Office

of the Inspector General, noting Louisiana's decision to create a $138 million business recovery

loan program with its Disaster Recovery Grant funds. *See* Ex. 10 (First Excerpt from

Investigative Records). The memorandum notes that "[i]n reviewing the program, several

concerns regarding due diligence presented themselves to us." *Id.* The next two paragraphs are

redacted, pursuant to the claimed Exemption Five, and the first sentence after the redacted

---

requirement for CDBG Disaster Recovery Grant recipients, substituting instead a similar
document called an Action Plan for Disaster Recovery. *See* 71 Fed. Reg. 7666, 7669 (Feb. 13,
2006).

The Action Plan for Disaster Recovery must describe, *inter alia*, the effects of the
covered disaster, the grantee's overall plan for disaster recovery, and monitoring standards and
procedures sufficient to ensure that program requirements are met. *Id.* The Action Plan for
Disaster Recovery must also contain numerous required certifications, including the grantee's
certification that it will affirmatively further fair housing in compliance with the Fair Housing
Act, as well as a certification that the grantee will give "maximum feasible priority to activities
that will benefit low- and moderate-income families." *Id.* at 7669, 7671.

portion states: "We hope that you can use your office to correct the application process, before large scale fraud is committed against the program." *Id.*

The second redacted document from the Investigative Records is an OIG email dated January 31, 2007, with the subject line "Re: Small Business Recovery Loans," and the entire body of the message redacted per claimed Exemption Five. *See* Ex. 11 (Second Excerpt from Investigative Records). The email appears to be responding to an email about the $138 million Louisiana business recovery loan program described above.

Aside from the brief description in the June 29 letter, described in Part III.A above, Defendant has not submitted any index, declaration, or explanation of its withholding of the redacted information. But the mere assertion that the deliberative process privilege applies is insufficient to support Defendant's decision to redact passages from these four documents in the Audit Records and Investigative Records. Thus, for example, Defendant has not shown that the redacted passages are either predecisional or deliberative. In order to meet its heavy burden, however, Defendant "must describe not only the contents of the document but also enough about its context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional part thereof." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) ("[T]he court needs to know whether the document explains, directly or by reference, the reason for the agency's decision."). In other words, Defendant must establish "what deliberative process is involved and the role played by the documents in issue in the course of that process." *Coastal States Gas Corp.*, 617 F.2d at 868.

Wholly apart from Defendant's failure to carry its burden by not providing Plaintiff with anything more than a cursory notation that it was claiming the deliberative process exemption, it is apparent from the context of the documents at issue that Defendant would not be able to meet

15

its burden should it attempt to do so. There is nothing in the unredacted portions of the documents to indicate that the documents were predecisional, as they do not appear to be part of any ongoing decisionmaking process. *See Tigue*, 312 F.3d at 80 ("[W]hile the agency need not show *ex post* that a decision was made, it must be able to demonstrate that, *ex ante*, the document for which executive privilege is claimed related to a specific decision facing the agency."). The documents are not marked as "recommendations" or "drafts," and do not on their face "bear on the formulation . . . of policy-oriented judgment." *Id.* (quoting *Grand Cent. P'Ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)). Absent a showing that a decision was being made or a policy was being considered, documents produced as part of an ongoing audit process cannot be considered predecisional: "Characterizing these documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word." *Coastal States Gas Corp.*, 617 F.2d at 868.

Nor do the documents at issue appear to be deliberative. There is nothing to indicate that the redacted portions "reflect[] the give-and-take of the consultative process," or that the documents are "deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another." *Id.* at 866.

Because Defendant has not made any showing that the redacted portions of the documents at issue are entitled to an exemption from disclosure on the basis of the deliberative process privilege, this Court should grant Plaintiff's motion for summary judgment and order the redacted portions to be disclosed in full.

## 2.    Defendant Has Not Shown that the Redacted Passages Are Exempt From Disclosure Under the Attorney-Client Privilege.

Finally, the June 29 letter notes that with regard to the Investigative Records, Exemption Five is being claimed, at least in part, on the basis of the attorney-client privilege. But there is

nothing in Defendant's assertion of the exemption that indicates how Defendant believes the attorney-client privilege applies, or to what portion of the redacted documents it applies. For the reasons noted above, the bare assertion that portions of a document may be redacted based on attorney-client privilege, without more, is insufficient to permit any reasoned judgment as to the applicability of the claimed exemption, and therefore fails as a matter of law. *See Halpern*, 181 F.3d at 290-91; *Founding Church of Scientology*, 603 F.2d at 949.

In sum, OIG has invoked the deliberative process and attorney-client privileges of Exemption Five as a basis for withholding entire documents and redacted passages responsive to Plaintiff's FOIA request, but has utterly failed to meet its burden of demonstrating that these records can be withheld under FOIA. *See Coastal States Gas Corp*., 617 F.2d at 868 ("We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why."). Defendant's determination to, in this manner, unilaterally deprive the American public of crucial information relating to the way in which a multi-billion dollar federal disaster recovery program is being administered thus subverts the purpose of FOIA, to "open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 361 (citations omitted). It should not be countenanced.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment, and order Defendant to disclose the withheld pages from the responsive records, and the redacted portions of those records that were disclosed.

Dated: July 26, 2007                              Respectfully submitted,
New York, NY

Theodore M. Shaw, Director-Counsel

Matthew Colangelo (MC-1746)
Robert H. Stroup
Damon Hewitt
NAACP LEGAL DEFENSE AND
  EDUCATIONAL FUND, INC.
99 Hudson Street, 16th Floor
New York, New York 10013
(212) 965-2200

Lawrence S. Lustberg (LL-1644)
Melanca D. Clark (MC-0908)
GIBBONS, P.C.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

Attorneys for Plaintiff