# EXHIBIT E

# GIBBONS

GIBBONS FELLOWSHIP IN
PUBLIC INTEREST & CONSTITUTIONAL LAW

JOHN J. GIBBONS
SENIOR PARTNER

LAWRENCE S. LUSTBERG
DIRECTOR

EMILY B. GOLDBERG
MELANCA D. CLARK

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Phone: 973.596.4500

June 11, 2007

Darlene D. Hall
Freedom of Information Act Officer
U.S. Department of Housing and Urban Development
Office of Inspector General
451 Seventh St., SW
Washington, DC 20410

Re: *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 07-CV-3378 (GEL)

Dear Ms. Hall:

  This letter is in response to your letter to Matthew Colangelo dated May 31 (please direct future correspondence to me). You were responding to a letter that I sent to Assistant U.S. Attorney Lara K. Eshkenazi on May 21, regarding OIG's inadequate response to LDF's FOIA request.

  As an initial matter, your letter states that we should have contacted you directly regarding our concerns about the inadequacy of OIG's response. We directed our correspondence to Ms. Eshkenazi in light of the pending litigation against HUD and the ethical requirement that a represented party not be contacted directly without the prior consent of counsel. *See* N.Y. Lawyer's Code of Prof'l Responsibility, Disciplinary Rule 7-104(A)(1). I spoke with Ms. Eshkenazi last week and obtained her consent to contact you directly for purposes of this communication; she is copied on this letter.

  We are aware that OIG has its own process for addressing FOIA requests as set out in 24 C.F.R. Part 2002, in addition to the general HUD regulations set out in 24 C.F.R. Part 15. But OIG is still an office within HUD, not a separate agency. *See* 5 U.S.C. app. 3 §§ 2, 11(2) (codifying the Inspector General Act of 1978, and establishing within HUD and other federal agencies an Office of Inspector General). The HUD Inspector General reports to and is under the supervision of the Secretary of HUD. *See* 5 U.S.C. app.3 § 3(a). The Supreme Court has

Darlene D. Hall
June 11, 2007
Page: 2

held that these and other provisions of the Inspector General Act make clear that an Office of Inspector General is plainly an office within, and not outside of or apart from, the agency in which it is established. *See NASA v. Fed. Labor Relations Auth.*, 527 U.S. 229, 238-41 (1999). A plaintiff is not required to proceed with separate FOIA lawsuits against an agency and every separate office within that agency that may possess responsive records.

   LDF's March 19 FOIA request was received by HUD on March 21, and was received by OIG – as you have previously acknowledged – on April 11. When LDF's complaint was filed in the Southern District of New York on April 27, judicial review was proper as to all elements of the FOIA request, because neither HUD nor OIG had responded with any determination on LDF's request for expedited processing within the required ten-day period. *See* 5 U.S.C. § 552(a)(6)(E). We have construed communications from OIG since the date of filing of our lawsuit – including your April 30 letter, and our May 21 response – as efforts to resolve the lawsuit, so far as it regards OIG records, in a cooperative instead of adversarial manner. Of course, if we are unable to reach an amicable resolution, we will seek appropriate recourse in court.

   Your May 31 letter states: "Although you requested 'studies,' we interpreted this to mean 'audits.'" LDF's request was not so narrow as the interpretation you propose. The obvious and intended meaning of the word "studies," in regard to the request for all records related to any OIG studies of the Disaster Recovery Grant program, includes not simply published audits but also any of OIG's ongoing examinations, analyses, investigations, or other reviews of the administration by HUD, Louisiana, and Mississippi of the CDBG Disaster Recovery Grant program. Moreover, LDF's request did not only seek "studies," but further sought "*[a]ll records relating to*" any studies. The term "records" was in turn defined to make clear that LDF sought:

> records of any and all kind, including, but not limited to, hard copy and electronic records, documents, spreadsheets, audiotapes, videotapes, and photographs. This request includes correspondence, memoranda, notes, e-mails, notices, telephone facsimiles, charts, tables, presentations, orders, filings, telephone or voice mail messages, agendas, and calendars. We also seek information about any meetings and/or discussions at which the topics covered in this request arose, including agendas, participant lists, minutes, transcripts, notes, and documents related to such meetings and/or discussions.

OIG's interpretation of LDF's request as a request for completed audits only, when LDF instead sought "all records relating to any studies," is therefore, far narrower than intended and appropriate.

   Your letter next states that we amended our request to seek documents that include only the states of Louisiana and Mississippi. This is also incorrect: my letter of May 21 made clear

Darlene D. Hall
June 11, 2007
Page: 3

that in addition to OIG records regarding Disaster Recovery Grant administration by those two state grantees, we also continued to seek OIG records regarding HUD's administration of the Disaster Recovery Grant program as well. The March 19 request sought records regarding "HUD's administration of, or any state grantee's administration of," the Disaster Recovery Grant program. My letter of May 21 revised LDF's request to exclude records regarding administration by three state grantees (Alabama, Florida, and Texas), but noted that LDF continued to seek records regarding Disaster Recovery Grant administration "*by HUD*, the state of Louisiana, and the state of Mississippi" (emphasis added).

Your May 31 letter next states that my follow-up letter sought the working documents associated with one of the four audits you initially provided. This is incorrect. I noted that, based upon the limited response provided, including the production of three non-responsive reports, OIG plainly had not conducted a search "reasonably calculated to uncover all relevant documents." I then noted that we were aware of extensive onsite monitoring and oversight of state grantees, and listed the names of half a dozen OIG personnel who were involved in full-time monitoring of the Disaster Recovery Grant program in Louisiana alone. This information was provided by way of further illustrating the inadequacy of OIG's response. To respond by misstating my request as a request for working papers associated with the single relevant audit you have already provided, and to ignore the express request that we be provided with records regarding OIG's ongoing monitoring of the Disaster Recovery Grant program, is unfair, or seriously misunderstands the request.

Your May 31 letter also notes that there are "a number of on-going audits that may be responsive to your request when completed," but that a new FOIA request will be required to access those audits. You have given no reason why you believe that records relating to ongoing audits that have not yet been completed would fall outside of LDF's March 19 FOIA request; nor have you given any reason why such records would be exempt from disclosure under FOIA. Moreover, even if such records were exempt from disclosure, the law requires that you provide us with an index of those records that adequately describes each withheld document or portion of a document, and that states the claimed exemption with sufficient specificity to permit a determination as to whether the material is actually exempt. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *see also Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

In light of the above, we reiterate our request for all responsive records as they concern any and all studies – including not only audits but any other studies, examinations, analyses, investigations, or other reviews, whether completed or ongoing – by OIG of the administration of the Disaster Recovery Grant program. We seek records regarding Disaster Recovery Grant administration by HUD, the state of Louisiana, and the state of Mississippi. If there are responsive records that you believe are exempt from disclosure, we expect that you will provide us with a sufficiently detailed *Vaughn* index as required by law.

Darlene D. Hall
June 11, 2007
Page: 4

      Your letter states that you will not expedite LDF's request for records. We here request that you reconsider this determination, as we think it more than clear that expedited processing is warranted. We have already demonstrated at length both in prior communications with you and in filings with the Court that expedited processing is appropriate, and will not rehash that discussion here. We believe, however, that your refusal to expedite LDF's request is a means of delaying the release of public records that will help a vulnerable citizenry understand how HUD is overseeing the administration of $17 billion of desperately needed housing redevelopment funds in the Gulf. Barring a change in your position, we will seek direct review of this decision by the Court as permitted by 5 U.S.C. § 552(a)(6)(E)(iii).

      Finally, you note that you are denying the request for a waiver of fees with regard to the documentation associated with Audit Report No. 2006-AT-0001. We do not seek that underlying documentation. We do, however, reiterate our request for a fee waiver as to all of the remaining documents that we believe are covered by the March 19 request and that have not been disclosed. The FOIA statute provides, at 5 U.S.C. § 552(a)(4)(A)(iii), that "[d]ocuments shall be furnished without any charge or at a charge reduced below the fees established under [§ 552(a)(4)(A)(ii)] if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." As previously demonstrated, a fee waiver is appropriate because disclosure of the information sought is in the public interest, is likely to contribute significantly to public understanding of HUD's activities, and is not sought for the commercial interest of LDF, a national non-profit civil rights litigation and public advocacy organization. The records are sought to inform the public's understanding of HUD's compliance, and the grantees' compliance, with the reporting, oversight, nondiscrimination, fair housing, overall benefit, and other requirements of the CDBG Disaster Recovery Grant program. A fee waiver is therefore warranted pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and the relevant regulations.

      As I explained above, we have attempted to proceed toward a cooperative resolution regarding the disclosure of all relevant documents sought by the March 19 FOIA request. This letter should be viewed as a part of that effort. We are, however, prepared to return to Judge Lynch to seek the Court's intervention if it is necessary to obtain the release of all responsive records. Please contact me at your earliest convenience to discuss how you would like to proceed.

Darlene D. Hall
June 11, 2007
Page: 5

Thank you for your kind attention to this matter.

Sincerely,

Melanca D. Clark

cc:    Lara K. Eshkenazi
       Matthew Colangelo