MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: LARA K. ESHKENAZI
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2758
Fax: (212) 637-2702

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NAACP LEGAL DEFENSE AND           :
EDUCATIONAL FUND                  :
                                  :
           Plaintiff,             :        07 Civ. 3378 (GEL)
                                  :
      v.                          :        ECF CASE
                                  :
UNITED STATES DEPARTMENT OF       :
HOUSING AND URBAN DEVELOPMENT     :
                                  :
           Defendant.             :
------------------------------------------------------------x

## DECLARATION OF J. BRYAN HOWELL

I, J. Bryan Howell, pursuant to the provisions of 28 U.S.C. § 1746, declare as follows:

1. I am the Deputy Counsel to the Inspector General (Acting) and Senior Litigation Attorney for the Office of Legal Counsel, Office of the Inspector General, Department of Housing and Urban Development. In this capacity, my duties include providing assistance to the U.S. Department of Justice in connection with Freedom of Information Act ("FOIA") lawsuits brought against the Office of the Inspector General ("OIG"). This aspect of my duties requires knowledge of the types of documents created and maintained by the various divisions and functions within OIG, which is comprised of the Office of Audit ("Audit"), the Office of Investigations (" Investigations"), the Office of Management and Policy ("OMAP") and the Office of Legal Counsel ("OLC"), and an

understanding of the provisions of the FOIA that exempt certain types of documents from disclosure in response to a request.

2.  On or about July 2, 2007, I was assigned as the attorney in the above-captioned case when the attorney previously assigned to the case, Richard Johnson, was notified that he would begin a nine-month active duty tour in the United States Air Force effective July 9, 2007.

3.  The mission of OIG is to promote the integrity, efficiency and effectiveness of HUD programs and operations to assist the Department in meeting its mission. In doing so, OIG detects and prevents waste, fraud, and abuse in HUD programs, both by recipients of HUD assistance and also within HUD itself. OIG seeks administrative sanctions, civil recoveries and/ or criminal prosecution of those responsible for waste, fraud and abuse in HUD programs and operations. We accomplish our mission by conducting independent and objective audits, investigations, and other activities relevant to the HUD mission. We keep the Secretary, Congress and the American public fully informed of our activities while working collaboratively with HUD staff and program participants to ensure the success of HUD programs. We are an independent agency that operates separately and distinctly from HUD.

4.  The Inspector General is appointed by the President and confirmed by the Senate. The Inspector General Act of 1978 was enacted to create independent agencies to conduct and supervise audits and investigations relating to the programs and operations of each respective Department. The IG Act provides that each Inspector General shall report to and be under the general supervision of the head of the

establishment involved or, to the extent such authority is delegated, the officer next in rank below such head, but shall not report to, or be subject to supervision by, any other officer of such establishment. Neither the head of the establishment nor the officer next in rank below such head shall prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpoena during the course of any audit or investigation. Only the President can remove an Inspector General.

5. Since Hurricanes Katrina, Rita, and Wilma struck the Gulf Coast, HUD OIG has established an audit and investigations presence in the disaster area to combat fraud, waste and abuse. HUD received about $17 billion in supplemental appropriations that are flowing into the region in the form of grants for housing and other needs, as well as emergency housing vouchers for households within the declared disaster areas. OIG has created a new Region, the Gulf Coast Region, solely to provide Hurricane Katrina oversight in the long recovery process. Both Audit and Investigations created headquarters-level Oversight offices to coordinate the efforts of the Gulf Coast Region field agents and auditors to liaise with HUD.

6. I am familiar with the FOIA request submitted by plaintiff that is the subject of the above-captioned litigation between plaintiff and the U.S. Department of Housing and Urban Development ("HUD"), in which this declaration is being filed.

7.    In connection with this case, I was instructed to review, among others, the documents responsive to plaintiff's FOIA request that were withheld from disclosure, either in full or in part, and to create a Vaughn Index pursuant to Vaughn v. Rosen, 484 F.2d 820, 826-828 (D.C. Cir. 1973) with respect to those same documents.

8.    Attached as Exhibit A to this declaration is the current version of the Vaughn index for Audit related material. Attached as Exhibit B to this declaration is the current version of the Vaughn index for Investigations related material. I have also authorized the release of several documents that upon further review -- a review that we would have conducted had plaintiff given us the opportunity to do so by administratively appealing OIG's initial decision with respect to its FOIA request to OIG -- we believe are properly releasable.

9.    I have personally reviewed the documents at issue and am familiar with the issues in this lawsuit. In addition, I have reviewed the declaration filed in this matter by FOIA Specialist Darlene Hall.

10.    I am familiar with FOIA's segregation requirement for nonexempt information contained in responsive agency records. I have reviewed all documents at issue in this litigation and have determined that every reasonably segregable non-exempt portion of every responsive document has been made available to plaintiff. As a result, I conclude that OIG has withheld in their entirety only those documents that fall within a FOIA exemption, or those documents wherein the portions exempt from disclosure under the FOIA are so inextricably intertwined with nonexempt material as to be non-segregable.

11.   In the following paragraphs, I have categorized the documents at issue in this lawsuit by FOIA exemption and have described the reasoning for withholding those documents under the FOIA.

### FOIA Exemption (b)(5)

12.   FOIA exemption (b)(5) ("Exemption 5") protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 exempts documents that are normally privileged in the civil discovery context, including those covered by the attorney-client privilege, attorney work-product privilege, and the deliberative process privilege, which exempts from disclosure documents that are both pre-decisional and deliberative. Based upon my review and recommendations, OIG has withheld 17 pages of audit material in part and 44 pages in full pursuant to FOIA Exemption 5. See Exh. A.

13.   Documents withheld from disclosure in part pursuant to the deliberative process privilege encompassed in FOIA Exemption 5 consist of the emails, memoranda of internal OIG audit meetings and analysis of various aspects of the HUD funded Katrina Disaster relief programs in both Mississippi and Louisiana. Pages 108, 109, 110, 111, 112, 115, 116, and 117 are Status Report documents from preliminary internal OIG audit reviews of proposed revisions by the State of Louisiana to its required action plan. All factual data contained in these documents has been released. The only portions of these documents that have been redacted are the sections entitled "Concerns" which reflect the thoughts, mental impressions and areas for possible further OIG inquiry as expressed in meetings among OIG audit staff. This information is not tied directly to any

particular OIG audit or activity, but is a planning, discussion, and discernment tool for internal use only. As such it is clearly pre-decisional and part of the agency's deliberative process. See Exh. A.

14. Documents withheld from disclosure in full pursuant to the deliberative process privilege are contained at Pages 188-232. The documents at Pages 188-213 all relate to an ongoing audit into Louisiana's automated grant award process. As this audit is ongoing, the scope and focus are still in development and are subject to discussion, review by Headquarters, amendment, modification, or abandonment. The withheld documents consist of a draft report of an audit entry meeting (P188-192), proposed slides to be used in making internal presentations (P193-200), another draft report of an audit entry meeting with staff email comments (P 201-205), and another set of proposed slides to used in making internal presentations (P206-213). All of the withheld material is pre-decisional in nature and part of the deliberative processes of the agency. See Exh. A.

15. The documents withheld from disclosure in full pursuant to the deliberative process privilege beginning at Page 214 are internal OIG auditor emails discussing a draft audit report (P214-218) and a draft audit report generated for discussion purposes only (P219-232). The final audit, as issued, 2006-AO-1001, has previously been provided to plaintiff in full. All of the withheld material is pre-decisional in nature and part of the deliberative processes of the agency. See Exh. A.

### FOIA Exemption (b)(6)

16. Based upon my review and recommendations, OIG has withheld 8 pages of Audit material in part based upon FOIA Exemption 6 which, similar to the protections afforded to private information and privacy interests of individuals by FOIA Exemption 7(c), provides for withholding personal information obtained in a non-law enforcement proceeding. The material withheld in part is contained on Pages 131, 148, 150, 153, 154, 156, 183, and 185. The only information redacted is cell phone numbers or telephone extension numbers of OIG auditors or attorneys. The names of the respective auditors or attorneys have not been redacted.

### FOIA Exemption (b)(7)(C)

17. Based upon my review and recommendations, OIG has withheld 14 pages of Investigative material in part. All of the redactions to these documents are of personal information related to OIG Special Agents, and in particular the names and direct contact information for these lower level OIG employees. See Exh. B.

18. Exemption (7)(C) allows for the withholding of documents that were compiled for law enforcement purposes where release would constitute an unwarranted invasion of the personal privacy of third parties or of OIG personnel. Exemption (7)(C) can be relied upon to protect personal information relating to individuals, other than the requester, so long as the public interest in disclosure does not override that individual's privacy interest. Accordingly, OIG regularly applies Exemption (7)(C) to withhold references to persons who are not targets of investigations but, instead, were merely mentioned in law enforcement files, and the identity and direct contact information of lower level employees, to avoid interference or harassment from outside persons.

Identification of public employees could conceivably subject them to harassment and annoyance in the conduct of their official duties, as well as in their private lives. Here, the personal information of OIG agents withheld from disclosure pursuant to Exemption (7)(C)) was compiled by OIG in the course of these agent's official duties in connection with the overall Katrina relief effort. As such, given the personal nature of the information, I concluded that disclosure of that information would result in an unwarranted invasion of personal privacy, as well as conceivably subjecting OIG employees to harassment and annoyance in the conduct of their official duties, as well as in their private lives. These documents can be found on Exhibit B at Pages 1, 2, 3, 29, 32, 33, 34, 35, 36, 37, 39, 40, 41, and 42. Identifying information of supervisory personnel, such as Special Agents in Charge, has not been redacted.

19.     The redactions that have been made pursuant to Exemption 7(C) were limited in scope and confined to the personal information of the Special Agents and third parties (primarily their names, email addresses, and telephone numbers) and this is evident when the redacted part is viewed in context of the information released. Because of the personal nature of the information withheld from disclosure pursuant to Exemption (7)(C), any public interest that might be served by disclosure is outweighed by privacy interests of the Agents that are served by the withholding of such information. Therefore, based upon my review and recommendations, OIG has withheld the information described above in paragraph 15 pursuant to Exemption (7)(C).

### Documents that, upon further review, have been released

20. Based upon my review of the materials withheld either in full or in part in the process of creating the <u>Vaughn</u> index, I determined that certain documents could be released. This determination would likely have been made in the administrative appeal process described in 24 C.F.R. § 2002.25, had plaintiff followed that process as applicable regulations require. I have authorized the release of 8 pages of material that OIG had withheld in full and to which it had asserted attorney-client and deliberative process privileges. As the matters discussed in those documents had actually been released outside OIG, any privilege with respect to those documents has been waived. I also have authorized the release of two documents in full that had previously only been released in part based upon OIG's assertion of attorney-client or deliberative process privilege. One of the documents referenced the matters contained in the attorney-client material previously withheld in full. The other document simply was withheld in error.

I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*

J Bryan Howell
Deputy Counsel to the Inspector General
(Acting)
Office of Legal Counsel
Department of Housing & Urban Dev.
Office of the Inspector General

Executed on the 16th day of August, 2007
Washington, D.C.