UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
                                                            :
NAACP LEGAL DEFENSE AND                                     :
EDUCATIONAL FUND, INC.,                                     :
                                                            :
                          Plaintiff,                        :
                                                            :         07 Civ. 3378 (GEL)
             -v-                                            :
                                                            :         **OPINION AND ORDER**
U.S. DEPARTMENT OF HOUSING AND                             :
URBAN DEVELOPMENT,                                         :
                                                            :
                          Defendant.                        :
                                                            :
------------------------------------------------------------x

Matthew Colangelo, Robert H. Stroup, Damon Hewitt,
NAACP Legal Defense and Educational Fund, Inc.,
New York, NY, Lawrence S. Lustberg, Melanca D. Clark,
Gibbons, P.C., Newark, NJ, for plaintiff.

Michael J. Garcia, United States Attorney for the
Southern District of New York (Lara K. Eshkenazi,
Assistant United States Attorney, Of Counsel),
New York, NY, for defendant.


GERARD E. LYNCH, District Judge:

        Plaintiff NAACP Legal Defense and Educational Fund, Inc. ("LDF"), brings this action

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of

certain agency records in the possession of the United States Department of Housing and Urban

Development ("HUD").  Plaintiff moves for partial summary judgment, arguing that defendant

has improperly withheld records in violation of FOIA.  Defendant cross-moves for partial

summary judgment, arguing that plaintiff's case should be dismissed because plaintiff failed to

exhaust its administrative remedies, or alternatively, that the records were properly withheld

pursuant to the deliberative process privilege.  Defendant's motion will be granted, and

plaintiff's motion will be denied.

## BACKGROUND

Only those facts relevant to the current motion will be recited here. The relevant facts

are undisputed.[1]

_____

[1] Defendant did not submit either a Rule 56.1 Statement in support of its cross-motion for partial summary judgment, or a Counterstatement in response to plaintiff's Rule 56.1 Statement, see S.D. & E.D. N.Y. R. 56.1(a)-(b), claiming that it is "the general practice in this Circuit" not to require the Government to submit a Rule 56.1 Statement or Counterstatement in FOIA cases because "agency affidavits alone will support a grant of summary judgment." (Def. Mem. 3 n.2, quoting Ferguson v. FBI, No. 89 Civ. 5071, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), citing in turn Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).) Plaintiff claims that, because defendant failed to submit a Counterstatement, the facts set forth in plaintiff's Rule 56.1 Statement should be deemed admitted for purposes of this motion. (Pl. Reply 1 n.1.)

Plaintiff's argument is both incorrect and irrelevant. Regardless of defendant's failure to respond to plaintiff's Rule 56.1 Statement, plaintiff nevertheless must adduce admissible evidence in the record to support the factual assertions contained in the Rule 56.1 Statement, as defendant "is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003). See 24/7 Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 46 (2d Cir. 2005) (noting that a defendant who moves for summary judgment but fails to show an absence of evidence supporting plaintiff's claims should not receive summary judgment, even if plaintiff does not oppose the motion with any evidence). In addition, the Court may, in its discretion, consider any facts "the parties fail to point out in their Rule 56.1 statements." Id. (internal quotation marks and citation omitted). See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion.") (internal quotation marks and citation omitted).

More importantly, however, none of the relevant facts in this case are in dispute. Defendant does not dispute that plaintiff made the FOIA request at issue, nor does defendant dispute the relevant events surrounding that request. Instead, the issues currently before the Court – whether plaintiff sufficiently exhausted its administrative remedies, and whether certain documents were properly withheld pursuant to the deliberative process privilege – involve purely legal inquiries, and resolution of those inquiries is not contingent on resolution of any factual disputes. Thus, even if the facts contained in plaintiff's Rule 56.1 Statement are admitted for purposes of this motion, that admission has no impact on the resolution of the motion.

Finally, plaintiff argues that defendant's failure to submit a Rule 56.1 Statement in support of its cross-motion for summary judgment renders defendant's motion "not properly made." (Pl. Reply 1 n.1.) Even if true, it is well established that the Court has wide discretion to consider a summary judgment motion regardless of a party's compliance with the local rules. See Madison Maidens, Inc. v. Am. Mfrs. Mut. Ins. Co., No. 05 Civ. 4584, 2006 WL 1650689, at

This case involves LDF's efforts to obtain access to records pertaining to HUD's administration of the Community Development Block Grant ("CDBG") Disaster Recovery Grant Program ("the Program"), a $16.7 billion grant allocated by Congress for expenses related to disaster relief, long-term recovery, and rebuilding expenses in those areas of the Gulf of Mexico most affected by Hurricanes Katrina and Rita in 2005.[2]  The statutes establishing the Program adopt the general framework that governs CDBG program funds generally, but also authorize HUD, upon request from a state, to waive many CDBG program requirements, except for those relating to nondiscrimination, fair housing, labor standards, and the environment.  119 Stat. at 2780; 120 Stat. at 472-73.  The Program requires each state to submit an action plan in advance of the receipt of grant funds that details the state's intended use of those funds, and to submit a quarterly report to Congress reporting on all awards and uses of funds.  119 Stat. at 2780; 120 Stat. at 473.  HUD has by regulation required grantees to meet public participation, reporting, and oversight requirements, as well as to certify that they are in compliance with civil rights mandates.  See 71 Fed. Reg. 7666 (Feb. 13, 2006); 71 Fed. Reg. 63,337 (Oct. 30, 2006).

---

*2 (S.D.N.Y. June 15, 2006).  Moreover, the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, and "to assist the court in determining which facts are genuinely undisputed."  Id.  Here, strict compliance with Local Rule 56.1 is not required for the Court to identify the material facts, as those facts have already been identified by plaintiff in its Rule 56.1 Statement and by defendant in its supporting affidavits, see, e.g., Carney, 19 F.3d at 812, and moreover, those facts are not in dispute.  Thus, defendant's motion for summary judgment will be considered by the Court to have been properly made.

[2] See Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006, Pub. L. No. 109-148, 119 Stat. 2680 (Dec. 30, 2005) (appropriating $11.5 billion to Louisiana, Mississippi, Texas, Florida, and Alabama); Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Hurricane Recovery, 2006, Pub. L. No. 109-234, 120 Stat. 418 (June 15, 2006) (appropriating an additional $5.2 billion to the same states).

3

On March 19, 2007, LDF submitted a FOIA request to HUD by overnight mail.  (Pl. Ex. 2.)  LDF's request sought certain records concerning HUD's administration of the Program as to the states of Louisiana and Mississippi.  The only pertinent request here involves paragraph 3 of LDF's initial request, by which LDF sought "[a]ll records relating to any studies conducted by the HUD Office of the Inspector General regarding HUD's administration of, or any state grantee's administration of, [the Program]."  (Id. at 4 ¶ 3.)  LDF also requested expedited processing for its FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E), which provides that a requester may seek processing of its request "as soon as practicable."  Under the expedited processing provision, a federal agency is required to decide whether to accept or reject the expedited request and give notice of its decision to the requester within ten days of the request. 5 U.S.C. § 552(a)(6)(E)(ii)-(iii); see 24 C.F.R. § 15.104(d).

HUD received LDF's FOIA request on March 21, 2007.  (Pl. Ex. 3 at 1.)  Because LDF requested documents in the possession of HUD's Office of the Inspector General ("OIG"), and because OIG has its own staff to process FOIA requests separate from HUD's FOIA office, HUD forwarded LDF's request to OIG's FOIA office to respond to paragraph three of the request.  (Pl. Ex. 4 at 1.)  OIG received LDF's request on April 11, 2007.  (Pl. Ex. 7 at 1.)

Neither HUD nor OIG responded to LDF's request for expedited processing within ten days.  As a result, LDF initiated this lawsuit on April 27, 2007, and filed an Order to Show Cause why preliminary injunctive relief should not be granted.  Shortly thereafter, on May 10, 2007, the parties agreed to a schedule for the release of all records sought in LDF's request, with the exception of the records sought in paragraph three, referring that portion of the request instead to the OIG.  (Stipulation & Order, May 10, 2007, at ¶ 5.)

4

Since LDF initiated suit, LDF and OIG have successfully resolved most of the issues originally presented concerning the processing of LDF's request without the Court's intervention. However, the parties have been unable to resolve one particular issue. Specifically, on June 20, 2007, OIG informed LDF of certain records that were responsive to paragraph three of LDF's FOIA request that had not previously been disclosed. (Pl. Ex. 6 at 2.) OIG identified those records as analyses of state action plans conducted by the Office of Audit, Disaster Oversight and Liaison Division ("the Audit Records").[3] (Id.) The June 20 letter noted that OIG would process the analyses and disclose them the following week. (Id.) Finally, the June 20 letter denied LDF's expedited processing request as "moot." (Id.)

On June 29, 2007, OIG made a partial disclosure of the Audit Records. Although the Audit Records included 133 pages, OIG only disclosed 88 of those pages. (Pl. Ex. 7 at 1.) In addition, those portions of the Audit Records that OIG did disclose included two documents that are substantially redacted. (Pl. Exs. 8-9.) According to OIG, the withheld and redacted documents were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5), which "protect[s] intra-agency communications subject to the deliberative . . . process privilege[]" ("Exemption Five").[4] (Pl. Ex. 7 at 1.) However, although OIG claimed that certain records were protected from disclosure by the deliberate process privilege, OIG did not simultaneously produce a

_____

[3] The June 20 letter also identified certain other records from OIG's Office of Investigations that had not previously been disclosed. (Pl. Ex. 7 at 1.) Those records have since been fully disclosed. (Def. Mem. 2 n.1; Pl. Reply 7 n.6.)

[4] Portions of the Audit Records were also redacted pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), which protect documents from disclosure where disclosure would result in an invasion of personal privacy, for example, by revealing personal information such as names and phone numbers. Plaintiff does not challenge OIG's withholding of those portions of the records. (Pl. Mem. 11 n.5; Def. Mem. 2 n.1.)

document itemizing all documents or portions of documents that it claimed fell within Exemption Five ("the Vaughn index"), as required under Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973), and as previously requested by LDF (see Pl. Ex. 6 at 2 n.2 ("You also request a Vaugh[n] index for those records we believe are exempt.")).

On July 26, 2007, plaintiff moved for partial summary judgment, "challeng[ing] [d]efendant's decision to withhold multiple pages from the Audit Records . . . , and to redact portions of the documents that were disclosed." (Pl. Mem. 6.) Defendant responded and cross-moved for partial summary judgment on August 16, 2007; both motions were fully briefed as of September 10, 2007.

## DISCUSSION

### I.    Failure To Exhaust

As an initial matter, defendant argues that the Court "should deny plaintiff's motion for summary judgment because LDF failed to exhaust its administrative remedies required by OIG's regulations." (Def. Mem. 2.) Specifically, defendant argues that "LDF's decision to send the OIG request to the wrong address . . . constitutes failure to exhaust its administrative remedies." (Id. 8, citing West v. Jackson, 448 F. Supp. 2d 207, 211-12 (D.D.C. 2006).) Alternatively, defendant argues that "the Court should deny relief to LDF because LDF failed to meet its obligation to seek administrative review of OIG's response prior to filing a lawsuit." (Id.) Both arguments are unavailing.

"FOIA requires the exhaustion of administrative remedies as a precondition to suit." Megibow v. Clerk of the U.S. Tax Court, No. 04 Civ. 3321, 2004 WL 1961591, at *3 (S.D.N.Y. Aug. 31, 2004); see, e.g., id. (recognizing that FOIA's exhaustion of administrative remedies

6

requirement is prudential and not jurisdictional, and thus may be waived by a party or the court).
See also Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990) ("Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.").  "The failure to comply with an agency's FOIA regulations" when making a FOIA request "is the equivalent of failure to exhaust."  West, 448 F. Supp. 2d at 211; see 5 U.S.C. § 552(a)(3)(a) ("[FOIA requests must be] made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." ).  See, e.g., Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 157 (1980).

Defendant argues that, by addressing its FOIA request to the wrong agency in violation of HUD's regulations, LDF failed to exhaust its administrative remedies, and therefore LDF is precluded from bringing suit in federal court.  Defendant is incorrect.  LDF's "decision to send the OIG request to the wrong address" (Def. Mem. 8) – even assuming that such a decision was deliberate as presumed by OIG (Pl. Ex. 6 at 1), and not simply an inadvertent error – did not violate HUD's FOIA regulations.  Although HUD's "published rules" identify a different office for the submission of requests for OIG records than for the submission of requests for other HUD records, see 24 C.F.R. § 2002.3(b), the applicable rules also expressly require HUD to forward misaddressed requests to the proper office.  Id. § 15.104(a) ("If you have sent your request to the wrong office, that office will send it to the correct office within 10 working days and will send you an acknowledgment letter.").  HUD's established procedure was followed here: after LDF incorrectly submitted its request for OIG records to HUD's FOIA office on March 21, 2007, that office forwarded the request to OIG, which received the request on April

11, 2007.[5]  Thus, LDF's misdirected request violated neither HUD's "published rules," nor

FOIA's directive that all requests be made "in accordance" with those rules.  5 U.S.C. §

552(a)(3)(a).

Defendant's reliance on West, 448 F. Supp. 2d 207, and Kessler v. United States, 899 F.

Supp. 644 (D.D.C. 1995), in support of its argument is unavailing.  In West, there was no

evidence that HUD had ever received the plaintiff's FOIA request.  448 F. Supp. 2d at 211.

Thus, the plaintiff in West failed to exhaust his administrative remedies because he did not

establish that he had ever submitted a FOIA request to HUD at all.  Id. at 211-12.  Here,

defendant acknowledges both that HUD's FOIA office received LDF's request, and that the

request was forwarded to OIG pursuant to HUD's own regulations.  Id. at 211 ("[FOIA's]

statutory deadlines . . . are triggered by the agency's *receipt* of the FOIA request.") (emphasis in

original).

Kessler is similarly inapposite.  In Kessler, the plaintiff submitted a FOIA request to the

Internal Revenue Service ("IRS"), but he misaddressed his request in violation of the IRS's

applicable regulations.  899 F. Supp. at 645.  The Kessler court found that, "[b]ecause [plaintiff]

failed to follow the procedures set forth in the IRS regulations, he has failed to make a proper

request under the FOIA and therefore has failed to exhaust his administrative remedies."  Id.

However, unlike HUD's regulations, the IRS regulations at issue in Kessler did not provide for

the forwarding of misdirected FOIA requests to the proper office within the IRS.  Thus, the IRS

---

[5] It is unclear why it took almost three weeks for LDF's request to be transferred from
HUD's FOIA office to OIG's FOIA office, in direct violation of HUD's rule that all misdirected
FOIA requests will be forwarded within 10 working days of receipt, especially considering that
both offices are located in the same building.  (Def. Mem. 7.)

regulations require a FOIA requester to direct a FOIA request to the appropriate office within the IRS, without exception – if a FOIA requester mistakenly addresses his request in violation of the IRS regulations, that mistake is not cured under the applicable regulations, and the requester has failed to exhaust his administrative remedies.  Conversely, the HUD regulations at issue here *expressly cure* such a mistake; indeed, those regulations require the agency itself to cure the requester's mistake by forwarding the request to the appropriate office.  Thus, accepting defendant's argument would have the perverse effect of imposing a requirement on FOIA requesters that is not imposed by HUD itself.

Alternatively, defendant argues that plaintiff was required to "seek administrative review of OIG's response prior to filing a lawsuit," and its failure to do so "warrants summary judgment in favor of the [g]overnment."  (Def. Mem. 8, citing Dettman v. U.S. Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986).)  Plaintiff argues that it constructively exhausted its administrative remedies when OIG failed to respond to its request for expedited processing within ten days.  The Court agrees.

"Courts have consistently held that FOIA requires completion of [the agency's] appeals process before an individual may seek judicial relief."  Hogan v. Huff, No. 00 Civ. 6753, 2002 WL 1359722, at *4 (S.D.N.Y. June 21, 2002).  However, failure to seek administrative review of an agency's FOIA decision may be "excused" where the agency "fails to comply with the applicable time limit provisions of [] FOIA."  Ruotolo v. Dep't of Justice, Tax Div., 53 F.3d 4, 8 (2d Cir. 1995), quoting 5 U.S.C. § 552(a)(6)(C).  Where a FOIA requester also requests expedited processing, the relevant "time limit provision" requires a government agency to determine whether to provide expedited processing and give notice of that determination within

ten days of the date of the request.  See 5 U.S.C. § 552(a)(6)(E)(ii)(I); 24 C.F.R. § 15.104(d).

In this case, it is undisputed that both OIG and HUD failed to respond to plaintiff's request for expedited processing within the applicable time limit, as required under FOIA.  Even if the clock began to run, not when HUD received LDF's request on March 21, but when the request was forwarded to OIG on April 11, more than ten days elapsed between OIG's receipt of the request and LDF's filing of this suit on April 27.  Once OIG failed to meet this ten-day deadline, LDF was entitled to seek judicial review of its FOIA request.  See 5 U.S.C. § 552 (a)(6)(E)(iii).

However, defendant does not challenge the propriety of plaintiff's suit insofar as it was brought to address OIG's failure to timely respond to plaintiff's expedited processing request. Instead, defendant challenges the propriety of plaintiff's suit insofar as plaintiff seeks relief, not for OIG's failure to timely respond to plaintiff's expedited processing request, but for OIG's substantive determination on plaintiff's underlying FOIA request.  Thus, the relevant inquiry is whether a FOIA requester who brings suit initially to challenge an agency's failure to respond to a request for expedited processing may challenge the agency's determination on the merits of the underlying FOIA request in the same suit without first pursuing an administrative appeal of the agency's substantive determination.  This is a somewhat arcane question that has not been considered by the Second Circuit.

There are valid considerations on both sides of the issue.  Although FOIA's exhaustion requirement is prudential, and therefore may be waived under appropriate circumstances, there are important reasons to require exhaustion of administrative appeals.  "Exhaustion of administrative remedies serves two main purposes."  Woodford v. Ngo, 126 S. Ct. 2378, 2385

10

(2006).  See McCarthy v. Madigan, 503 U.S. 140, 145 (1991).  First, exhaustion protects "administrative agency authority," and "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," thereby discouraging "disregard of [the agency's] procedures."  Woodford, 126 S. Ct. at 2385.  Second, "exhaustion promotes efficiency," as agencies are often able to resolve claims "more quickly and economically" than a federal court.  Id.  See Parisi v. Davidson, 405 U.S. 34, 37 (1972).

    In this case, however, requiring a FOIA requester to pursue administrative appeals after an agency has already failed to comply with statutorily-imposed time limits would not further these objectives, and moreover, would inhibit what is intended to be a simple process to give the people access to records created by their government.  When an agency has ignored a request for expedited processing, it has already "disregard[ed]" its own procedures, procedures which are statutorily imposed and which are important to insuring that the public receive time-sensitive information without delay.  See Washington Post v. Dep't of Homeland Sec., 459 F. Supp. 2d 61, 74 (D.D.C. 2006) ("[F]ailure to process FOIA requests in a timely fashion is tantamount to denial [of the request].") (internal quotation marks and citation omitted).  (See, e.g., Pl. Reply 7 ("[R]equiring administrative review in this instance would frustrate the statutory goal of providing for expedited processing in cases of compelling need . . . .").)  In addition, efficiency would be reduced, not increased, by forcing the litigant to return to the agency to pursue an administrative appeal, after judicial intervention has already been invoked to review the FOIA request, and the federal court has already become familiar with the underlying request during the course of the litigation.

Furthermore, the plain language of the statute and the relevant case law weigh against defendant's argument here.  Under 5 U.S.C. § 552(a)(6)(E)(iii), "failure by an agency to respond in a timely manner to [an expedited processing] request shall be subject to judicial review under paragraph (4)."  Paragraph 4, in turn, provides that "[a] district court . . . shall not have jurisdiction to review an agency denial of expediting processing of a request for records after the agency has provided a *complete* response to the request."  5 U.S.C. § 552(a)(6)(E)(iv) (emphasis added).  Thus, an agency's substantive response to the underlying FOIA request does not negate the court's ability to review the agency's determination unless and until that response is "complete" – the inclusion of "complete" in this provision was presumably intended to provide for judicial review over the substantive merits of the agency's disclosure.  Here, LDF claims that the government's disclosure was not complete; if LDF is correct, then OIG has not made a "complete" disclosure, and the Court therefore retains authority to review LDF's claim under the plain language of the statute.

The relevant case law also weighs against defendant.  Essentially, defendant argues that, by eventually responding to plaintiff's request, plaintiff's initial suit was mooted, and plaintiff was required to pursue administrative appeals of its substantive request before returning to federal court.  But, as this Court previously held, "a [FOIA] claim . . . cannot be mooted simply by providing a response, for in that case a court must still address plaintiff's claim that he should have received additional documents."  Dimodica v. U.S. Dep't of Justice, No. 05 Civ. 2165, 2006 WL 89947, at *4 (S.D.N.Y. Jan. 11, 2006).  See also Pollack v. Dep't of Justice, 49 F.3d 115, 119 (4th Cir. 1995) ("[I]t was error for the district court to conclude that it was somehow deprived of jurisdiction because [the plaintiff] failed to file administrative appeals . . . during the

litigation."). Indeed, the D.C. Circuit has suggested that the merits of an agency's FOIA determination are so intertwined with the propriety of the agency's expedited processing decision that, in some situations, a requester may only receive "full relief" on its expedited processing claim when the court also adjudicates the "merits" of the underlying FOIA request. Edmonds v. FBI, 417 F.3d 1319, 1323-24 (D.C. Cir. 2005); see id. (affirming district court's "vindicat[ion]" of FOIA requester's "statutory right" to expedited processing by providing her with "full relief on the merits of her claim") (internal quotation marks omitted).

Furthermore, defendant concedes that, when an agency fails to respond to a standard FOIA request within twenty days, the requester has constructively exhausted its administrative remedies and may challenge the merits of the agency's determination in federal court, Ruotolo, 53 F.3d at 9; see 5 U.S.C. § 552(a), but argues that the same right that accompanies a *standard* FOIA request does not translate to the right to seek judicial review of the merits of an *expedited* FOIA request. In support of its argument, defendant cites Judicial Watch, Inc. v. U.S. Naval Observatory, 160 F. Supp. 2d 111 (D.D.C. 2001), which held that "failure to timely respond to the request for expedited processing is not equivalent to constructive exhaustion of administrative remedies as to the request for documents." Id. at 113. However, Judicial Watch is unpersuasive, as the court there did not fully consider the plain language of the statute, which is inconsistent with its conclusion. As previously established, there is no support in the statute, or in the case law, for defendant's interpretation – FOIA itself authorizes courts to review an agency's expedited request determination, just as it authorizes courts to review an agency's standard request determination, and that authority extends until the agency has made *complete* disclosure of the requested material (unless the material is otherwise protected under FOIA's

13

exemptions). Indeed, just as judicial review of an agency's failure to comply with the standard processing time limit is meant to prevent federal agencies from "drag[ging] [their] feet" in processing a FOIA request, so too does judicial review of an agency's failure to comply with the expedited processing time limit prevent federal agencies from "pay[ing] lip service to a requester's statutory and regulatory entitlement to expedition." Elec. Privacy Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30, 37 (D.D.C. 2006) (internal quotation marks and citation omitted).

Defendant also argues that "if the Court accepts plaintiff's interpretation of the statute – that filing a request for expedited processing automatically reduces the amount of time that an agency has to substantively respond to a FOIA request to ten days – any FOIA requester would be able to reduce the statute's twenty-day constructive exhaustion time frame to ten days merely by filing an unwarranted request for expedited processing." (Def. Reply 3.) Defendant misunderstands the expedited processing provision. An agency is not required to *substantively* respond to a FOIA request within ten days when a requester files an expedited request – all the agency must do in such a situation is decide whether to process the request "as soon as practicable," and provide notice of that decision to the requester within ten days. 5 U.S.C. § 552(a)(6)(E)(ii)-(iii). Thus, this holding does not impose on onerous burden on federal agencies; in order to avoid judicial review, an agency must simply decide to either accept or reject the expedited request, and notify the requester of that decision, within ten days. The time limits applicable to standard FOIA requests would then apply. In any event, even if defendant were correct that allowing judicial review under these circumstances would result in broad judicial review of agency FOIA determinations, such a result would be consistent with the spirit of FOIA itself: "FOIA . . . envisions the courts playing an important role in guaranteeing that agencies

14

comply with its terms." Elec. Privacy, 416 F. Supp. 2d at 37.

Finally, the practical implications of accepting defendant's argument count strongly against doing so.  If courts declined to review the merits of an agency's FOIA determination simply because the agency eventually made some disclosure, then every time an agency eventually complied with an expedited FOIA request – even if that compliance was woefully inadequate – the requester would be required to return to the agency to pursue administrative appeals, thereby dividing the dispute over a single FOIA request into a "piecemeal" series of disputes pending simultaneously before both the federal court and the agency, the exact result defendant claims it is trying to avoid.  (Def. Mem. 10 n.7.)  Not only would such a result not further the goals of administrative review, but it would inhibit the very purpose of FOIA itself, by imposing additional, unnecessary roadblocks in the path towards government accountability. See, e.g., Halpern v. FBI, 181 F.3d 279, 284-85 (2d Cir. 1999).

Accordingly, the Court turns to the merits of plaintiff's request.

## II.    Deliberative Process Privilege

Plaintiff argues that it is "entitled to summary judgment with regard to OIG's refusal to disclose numerous pages from the Audit Records" because OIG's refusal "is based on an exceedingly cursory explanation that falls far short of complying with the requirements of the law." (Pl. Mem. 9.)  Defendant counters that, during the course of this litigation, "OIG determined that" the withheld records "are both pre-decisional and deliberative," and therefore that they were properly withheld pursuant to the deliberative process privilege.  (Def. Mem. 14.) Although the government's initial disclosure was substantially inadequate in providing the basis for the claimed exemption, defendant has properly and sufficiently documented that basis during

the course of this litigation.  Therefore, the withheld documents are protected by the deliberative

process privilege, and plaintiff's motion will be denied.

Summary judgment pursuant to Fed. R. Civ. P. 56 is the procedural vehicle by which

most FOIA actions are resolved.  See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993)

("Generally, FOIA cases should be handled on motions for summary judgment, once the

documents in issue are properly identified.").  To prevail on a summary judgment motion in a

FOIA case, an agency must demonstrate "'that each document that falls within the class

requested either has been produced, is unidentifiable, or is wholly exempt from the Act's

inspection requirements.'"  Ruotolo, 53 F.3d at 9, quoting Nat'l Cable Television Ass'n, Inc. v.

FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).[6]  "Affidavits or declarations . . . giving reasonably

---

[6] In addition, "'[i]n order to prevail on a motion for summary judgment in a FOIA case, the defending agency [must] show[] that its search [for the requested documents] was adequate.'"  Ruotolo, 53 F.3d at 9, quoting Carney, 19 F.3d at 812.  Plaintiff does not challenge the adequacy of OIG's search for purposes of this motion (Pl. Mem. 8 n.4), although it appears to reserve the right to make such a challenge at a later date (Pl. Reply 10 n.7).  However, any such challenge would fail, as OIG has "show[n] that it made a good faith effort to search for the records requested, and that its methods were 'reasonably expected to produce the information requested.'"  Kidd v. Dep't of Justice, 362 F. Supp. 2d 291, 294 (D.D.C. 2005), quoting Oglesby, 920 F.2d at 68.

Specifically, OIG submitted the declaration of Darlene Hall, the individual responsible for processing OIG FOIA requests, who conducted a search that was "reasonably calculated to discover the requested documents," Grand Central P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999), by twice contacting the staff members responsible for maintaining the requested documents.  (Hall Decl. ¶¶ 4, 8.)  See, e.g., Oglesby, 920 F.2d at 68 (an agency is not required to search every record system, but only to show "that it made a good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested"); Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (an agency need not "take extraordinary measures to find the requested records").  Moreover, it is undisputed that OIG's search uncovered a number of documents, including four audit reports provided to LDF, only a small portion of which have been withheld.  Finally, the Hall Declaration "describes" the OIG's "method for searching files, in detail[,] cites to the actual file[s] located as a result[,] . . . describes the subject matter of the file[s] searched[,] and sets forth the number of documents found, processed and released to plaintiff," Garcia, 181 F. Supp.

detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); see Halpern, 181 F.3d at 291.  Although the Court reviews the agency's determination that requested information falls within a FOIA exemption de novo, see 5 U.S.C. § 552(a)(4)(B); Halpern, 181 F.3d at 287, the declarations submitted by the agency in support of its determination are "accorded a presumption of good faith." Carney, 19 F.3d at 812 (internal quotation marks and citation omitted).

As previously established, FOIA requires that agency records be made publicly available upon a request that "reasonably describes such records and . . . is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3).  In enacting FOIA, however, Congress recognized that the public's interest in government disclosure must be balanced with the government's "legitimate interest in keeping certain information confidential." Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 925 (D.C. Cir. 2003), citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989).  To that end, Congress carved nine exemptions from public disclosure into FOIA, including Exemption Five, which is at issue here. See 5 U.S.C. § 552(b).  Although these exemptions are given a "narrow compass," Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (internal quotation marks and citation omitted); see Grand Central P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999), FOIA exemptions are nonetheless "intended to have meaningful reach and application." John Doe Agency, 493 U.S. at 152.

---

2d at 367, and plaintiff has provided "no tangible evidence" that any other documents exist "and are being withheld in bad faith," id. at 369.

Exemption Five protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption Five incorporates the privileges available to an agency in civil litigation, including the deliberative process, attorney-client, and work-product privileges. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Hopkins v. U.S. Dep't of Housing and Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991). Documents covered by the deliberative process privilege include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, 421 U.S. at 150 (internal quotation marks and citations omitted). "The object" of the deliberative process privilege "is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the [g]overnment." Klamath, 532 U.S. at 8-9 (internal quotation marks and citations omitted). See, e.g., EPA v. Mink, 410 U.S. 73, 87 (1973), abrogated by statute on other grounds, Pub. L. No. 93-502, 88 Stat. 1561 (1973) ("[E]fficiency of [g]overnment would be greatly hampered if, with respect to legal and policy matters, all [g]overnment agencies were prematurely forced to 'operate in a fishbowl.'").

Under FOIA, an agency record must satisfy three conditions to qualify for the deliberative process privilege. It must be "inter-agency or intra-agency," 5 U.S.C. § 552(b)(5), that is, "its source must be a [g]overnment agency," Klamath, 532 U.S. at 8, and it "must be both 'predecisional' and 'deliberative.'" Grand Central, 166 F.3d at 482 (citations omitted). A record is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision . . . ." Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 194 (1975); see Grand Central, 166 F.3d at 482. "To establish that a document is predecisional, the

18

agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." Judicial Watch, Inc. v. Exp.-Imp. Bank, 108 F. Supp. 2d 19, 35 (D.D.C. 2000), citing Formaldehyde Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1123 (D.C. Cir. 1989). A record is "deliberative" when "it reflects the give-and-take of the consultative process." Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (internal quotation marks and citation omitted).

However, an agency cannot simply claim the privilege without providing the requester with an explanation for its withholding. In light of the "innate impetus that encourages agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of information," an agency may not justify withholding documents on the basis of "conclusory and generalized allegations of exemptions," but must instead provide a FOIA requester with a "relatively detailed analysis in manageable segments" of all withheld material. Vaughn, 484 F.2d at 826; see also Halpern, 181 F.3d at 290-91. Accordingly, in order to carry its burden of showing that the documents were properly withheld pursuant to a FOIA exemption, an agency must submit a Vaughn index, setting forth in detail the bases for the claimed exemption. The Vaughn index must adequately describe each withheld document or portion of a document, and must state the claimed exemption with sufficient specificity to "permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Wash., D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). In addition, agency affidavits submitted in support of an agency's assertion that a claimed exemption applies must set forth with "reasonable specificity" the nature of the documents at issue, Halpern, 181 F.3d at 291, and must explain why the withheld information "logically falls within the claimed exemption," id. at

293.

On June 29, OIG made a partial disclosure of the Audit Records, releasing 88 out of 133 pages of the records, and extensively redacting two six-page documents within the records.  (See Pl. Mem. 13-14 (describing the redacted documents).)  However, OIG did not provide LDF with a Vaughn index detailing its reasons for not disclosing the remaining pages and redacting the disclosed documents.  Instead, with respect to the withheld pages, OIG merely stated that "the withheld material consists of pre-decisional discussions or comments reflecting staff evaluations and opinions, draft material, and telephone numbers" (Pl. Ex. 7 at 1), and with respect to the redacted documents, OIG gave no explanation whatsoever, merely including next to the redactions a handwritten notation of "b5," presumably indicating that the redacted materials were withheld pursuant to Exemption Five (Pl. Exs. 8-9).

The mere invocation of Exemption Five, in such a cursory manner, is insufficient to meet OIG's obligation to justify its non-disclosure.  OIG did not provide to LDF a Vaughn index detailing the basis for its claimed exemption, nor did it provide to LDF any affidavits or declarations explaining the justification for its withholding that would permit "reasoned judgment" as to whether the withheld pages and the redacted documents were actually exempt. Founding Church, 603 F.2d at 949.  The cursory explanation that OIG initially provided to LDF is precisely the kind of "conclusory and generalized" allegation of exemption that FOIA does not permit.  Vaughn, 484 F.2d at 826; see also Halpern, 181 F.3d at 290-91.  OIG's initial failure to document the basis of its claimed exemption undermines the goal of FOIA to "open agency action to the light of public scrutiny."  Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal quotation marks and citation omitted).

20

However, during the course of this litigation, OIG belatedly produced a <u>Vaughn</u> index, along with an accompanying declaration in support of its claims of exemption. (Def. Exs. A-B.) OIG argues that the <u>Vaughn</u> index and accompanying declaration it submitted in connection with this litigation establish that the withheld documents were created to "'assist an agency decisionmaker in arriving at his decision,'" (Def. Mem. 15, quoting <u>Nat'l Council of La Raza v. Dep't of Justice</u>, 411 F.3d 350, 356 (2d Cir. 2005)), and contain "predecisional concerns or planning regarding a potential action on behalf of OIG" (Def. Mem. 15), thereby satisfying the deliberative process privilege.

Plaintiff argues that, despite OIG's belated compliance with its FOIA responsibilities, it nevertheless has failed to meet its burden of justifying its nondisclosure because it has not adequately established that the withheld and redacted documents are either predecisional or deliberative.[7] Plaintiff argues that the declaration submitted with the <u>Vaughn</u> index during the course of this litigation "does not provide sufficient detail to enable the Court to determine the validity of [d]efendant's claim of deliberative process privilege." (Pl. Reply 8.) Specifically, plaintiff claims that the declaration "fails to provide information about the withheld records that sufficiently reveals 'the role played by the documents' . . . in the claimed deliberative process," and that the declaration generally "fails to illuminate the decisionmaking process to which" the withheld and redacted documents relate. (Pl. Reply 8-9, quoting <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 868 (D.C. Cir. 1980).)

---

[7] Plaintiff does not dispute that a government agency, OIG, is the "source" of the withheld documents. <u>Klamath</u>, 532 U.S. at 8.

Plaintiff's arguments are unpersuasive.  First, the Court must afford "considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'"  Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n, 600 F. Supp. 114, 118 (D.D.C. 1984), quoting Vaughn, 523 F.2d at 1144.  This deference is appropriate because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'"  Chem. Mfrs., 600 F. Supp. at 118, quoting Sears, 421 U.S. at 151.

Furthermore, although OIG's Vaughn index and accompanying declaration are perhaps not as full as might be ideal, they nevertheless provides a sufficient basis for making a "reasoned judgment" that the documents fall within the scope of the deliberative process privilege.  Founding Church, 603 F.2d at 949; see Halpern, 181 F.3d at 291 ("[A] number of courts, including our own, have eschewed rigid adherence to any particular indexing format under the Vaughn standard, opting instead for a functional approach.").  First, the withheld pages of the Audit Records are predecisional.  According to the OIG, the withheld pages relate to an "ongoing audit" of which "the scope and focus are still in development and . . . subject to discussion, review by Headquarters, amendment, modification, or abandonment."  (Howell Decl. ¶ 14.)  Thus, the withheld records are made up, not of final analyses, but of "draft" reports and "proposed slides to use in making internal presentations," which involve the consideration of certain issues preceding the release of the OIG's final audit report.  (Id. ¶¶ 14-15.)  "Draft documents, by their very nature, are typically predecisional and deliberative."  Kidd, 362 F. Supp. 2d at 295.

Second, the records are deliberative.  The withheld pages represent OIG's internal

22

analysis of what the agency ought to report, or what actions it should take in the future with respect to the "HUD funded Katrina Disaster relief programs in both Mississippi and Louisiana." (Howell Decl. ¶ 13.)  Thus, the documents are intended to "assist an agency decisionmaker" in developing OIG's final audit report, Nat'l Council, 411 F.3d at 356, pursuant to the CDBG program mandate.  The withheld documents, which were "generated for discussion purposes only" (Howell Decl. ¶ 15), therefore reflect the type of "advisory opinions, recommendations and deliberations" that are protected by the deliberative process privilege, Grand Central, 166 F.3d at 482 – they represent "the give-and-take of the consultative process."  Wolfe, 839 F.2d at 774.  Accordingly, the non-disclosed pages were protected by the deliberative process privilege. See Judicial Watch, Inc. v. Rossotti, No. WNM-01-2672, 2002 WL 31962775, at *7 (D. Md. Dec. 16, 2002) (finding that the IRS properly withheld a list of recommended issues to be pursued in an audit, a discussion of the IRS's ability to support its position on these issues, internal e-mails about the audit, and two draft memoranda regarding the audit); Hamilton Sec. Group, Inc. v. Dep't of Housing and Urban Dev., 106 F. Supp. 2d 23, 30-33 (D.D.C. 2000) (holding that a "draft audit report [prepared by OIG] . . . [was] both pre-decisional and deliberative, and disclosure of the draft audit report would threaten the integrity of the agency's policymaking processes[]").

Similarly, the redacted portions of the disclosed documents are also predecisional and deliberative.  Those documents relate to "preliminary internal OIG audit reviews of proposed revisions by the State of Louisiana to its required action plan" under the CDBG program. (Howell Decl. ¶ 13.)  The redacted portions – entitled "Concerns" – "reflect the thoughts, mental impressions, and areas for possible further OIG inquiry as expressed in meetings among OIG

audit staff." (Id.) Such "[c]oncerns" of OIG staff "'reflect[] the personal opinions of the writer rather than the policy of the agency,' and . . . if released, would inaccurately reflect or prematurely disclose the views of the agency." Grand Central, 166 F.3d at 482, quoting Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 559 (1st Cir. 1992). "[D]ocuments [that] include the . . . observations and questions" of agency staff are "precisely the type of candid discussion that the deliberative process privilege is designed to shield." Abraham Fruchter & Twersky LLP v. U.S. SEC, No. 05 Civ. 00039, 2006 WL 785285, at *3 (S.D.N.Y. Mar. 29, 2006). Therefore, the redacted portions of the disclosed documents were both predecisional and deliberative, and thus protected by the deliberative process privilege.

Significantly, LDF does not contend that OIG failed to disclose any actual data in connection with the Audit Records. Rather, it is undisputed that OIG released "[a]ll factual data" related to the Audit Records, including both the final audit and all data related to the redacted documents. (Howell Decl. ¶ 13.) While defendant is not required to disclose documents reflecting its predecisional consideration of the underlying data, the public is entitled to review the data itself. See Grand Central, 166 F.3d at 482 ("The privilege does not . . . cover 'purely factual' material."), quoting Hopkins, 929 F.2d at 85. OIG has disclosed that data to LDF, and LDF can use that data to inform the public about the progress of the Program.

Finally, there is no need in this case for an actual inspection of the withheld records to determine that they fall within the scope of the deliberative process privilege. See Grand Central, 166 F.3d at 483 (affirming district court's in camera analysis of withheld records). Although LDF did not request additional discovery to determine whether the withheld documents fall within the scope of the deliberate process privilege, such a request would

nonetheless be denied, as "discovery relating to the . . . exemptions [an agency] claims for

withholding records generally is unnecessary if the agency's submissions are adequate on their

face." Carney, 19 F.3d at 812; see Wood v. FBI, 432 F.3d 78, 84 (2d Cir. 2005). In this case,

the declaration submitted by defendant is "adequate on [its] face" because it is sufficiently

"detailed, nonconclusory and submitted in good faith." Wood, 432 F.3d at 84, citing Grand

Central, 166 F.3d at 488-89.

Thus, OIG properly withheld the disputed records pursuant to the deliberative process

privilege. Nevertheless, it must be noted that OIG's eventual compliance with its FOIA

responsibilities does not excuse its initial disobedience. Although defendant belatedly

established a legitimate basis for its claimed exemption, its initial failure to comply with FOIA's

directives was costly, not just to the parties in this litigation – litigation that might have been

avoided had defendant initially complied with its legal responsibilities – but to the public

interest. Agencies cannot choose to obey certain legal directives while ignoring, or paying only

"lip service," to others. Elec. Privacy, 416 F. Supp. 2d at 37. Both government agencies and the

public are best served when agencies operate transparently, and within the confines of

established law.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and

defendant's cross-motion for summary judgment is granted. Although the motions are

denominated motions for "partial" summary judgment, the remainder of this action has been

mooted by the government's production of the requested documents. Accordingly, the Clerk is

respectfully directed to close this case.

SO ORDERED.

Dated: New York, New York
        November 30, 2007

GERARD E. LYNCH
United States District Judge